# EXHIBIT A




# Industry-Wide Agreement

between

New York Hotel and Motel Trades Council, AFL-CIO

and

Hotel Association of New York City, Inc.

(Effective July 1, 2012)

## CONTENTS

**Introduction - A Message from HTC President Peter Ward** ...................... v
**Industry-Wide Agreement** ........................................................................ 1
Preamble ........................................................................................ 1
Article 1 ........................................................................................ 1
Article 2 - Excluded Categories ................................................................ 2
Article 3 - Union Membership .................................................................. 2
Article 4 - Union Dues ............................................................................ 3
Article 5 ........................................................................................ 3
Article 6 - New Employees ...................................................................... 4
Article 7 - Hotel Classification ................................................................. 5
Article 8 - Part-time Work and Premium Pay; Substitute and Extra Employees ........................................................................ 5
Article 9 - Extra Painters ......................................................................... 8
Article 10 - Housing-meals ...................................................................... 8
Article 11 - Working Hours, Meal Period, Overtime, Etc. ........................... 8
Article 12 - Minimum Wage ..................................................................... 10
Article 13 - Wages .................................................................................. 11
Article 14 - Wage Increases ..................................................................... 12
Article 15 - Extra Rooms ......................................................................... 12
Article 16 - Cots ...................................................................................... 13
Article 17 - Major Structural Alterations .................................................. 13
Article 18 - Employer Rules and Regulations ........................................... 13
Article 19 - Duties of Excluded Categories ................................................ 14
Article 20 - Relief Employees ................................................................... 14
Article 21 - Hiring ................................................................................... 14
Article 22 - Management Rights ............................................................... 17
Article 23 - Seniority ............................................................................... 17
Article 24 - Union Activity ....................................................................... 19
Article 25 - No Discrimination ................................................................. 19
Article 26 - Complaints, Grievances and Arbitration ................................. 20

Case 1:16-cv-05248-LAP Document 37-3 Filed 03/27/17 Page 4 of 18

Article 27 - Discharge and Discipline ........ 21
Article 28 - Vacations ........ 23
Article 29 - Holidays ........ 25
Article 30 - Personal Days ........ 27
Article 31 - Jury Duty ........ 28
Article 32 - Bereavement Pay ........ 29
Article 33 - Health Benefit Funds ........ 29
Article 34 - 401(k) Plan ........ 29
Article 35 - Pension Fund ........ 30
Article 36 - Training and Scholarship Fund ........ 30
Article 37 - Legal Fund ........ 31
Article 38 - Strikes and Lockouts ........ 31
Article 39 - Contract with Non-member Hotels ........ 32
Article 40 - Status Quo Agreement of March 23, 1938 ........ 33
Article 41 - Modification of this Agreement ........ 33
Article 42 - Visitation Clause ........ 33
Article 43 - Notices ........ 34
Article 44 - Cost of Living ........ 34
Article 45 - Area Standards and Work Preservation ........ 34
Article 46 - Furnishing Security ........ 35
Article 47 - Banquet Department ........ 35
Article 48 - Relief Appeals ........ 40
Article 49 - Uniforms and Employee Facilities ........ 40
Article 50 - Groups and Porterage ........ 41
Article 51 - Night Shift Differential ........ 42
Article 52 - Severance Pay ........ 43
Article 53 - Technological Change ........ 43
Article 54 - Sick Leave ........ 44
Article 55 - Leave of Absence ........ 45
Article 56 - Voluntary Political Action Fund ........ 46
Article 57 - Conversion of Residential Units ........ 46

Article 58 - Authority to Enforce Contract ..... 46
Article 59 - Successors and Assigns ..... 46
Article 60 - Accretion and Neutrality/Card Check ..... 49
Article 61 - Maintenance and Electrical Work ..... 50
Article 62 - Union Training ..... 51
Article 63 - Spotters ..... 51
Article 64 - Hidden Surveillance Cameras ..... 52
Article 65 - Bankruptcy ..... 53
Article 66 - Electronic Information ..... 53
Article 67 - Immigrants' Rights ..... 54
Article 68 - Translations ..... 55
Article 69 - Safety and Health ..... 55
Article 70 - Panic Buttons ..... 57
Article 71 - Adequate Supplies ..... 58
Article 72 - Expiration and Renewal ..... 58
Article 73 - Separability ..... 59
Article 74 - Ratification of Agreement ..... 60
Schedule 1 ..... 61
Schedule A - Minimum Wage Scales ..... 62
Schedule A-1 - Classification of Meals, Hours and Wages for Banquet Servers & Banquet Captains ..... 77
Schedule A-2 - Vacations, Call-in Pay and Holiday Pay for Checkroom and Washroom Attendants ..... 83
Schedule A-3 - Vacations and Holidays for Steady Extra Banquet Bartenders ..... 84
Schedule B - Employee Benefit Funds ..... 86
Addendum I ..... 96
Addendum II ..... 96
Addendum III ..... 97
Addendum IV ..... 97
Addendum V ..... 100
Addendum VI ..... 101

Case 1:16-cv-05248-LAP Document 37-3 Filed 03/27/17 Page 6 of 18

Addendum VII - Study Committee........ 101
Form of Voluntary Contribution Deduction Authorization ........ 105
Side Letter to IWA (1)........ 106
Side Agreement (2)........ 107
Side Agreement (3)........ 108
**INDEX........ 109**

AGREEMENT entered into so as to be effective July 1, 2012 between the HOTEL ASSOCIATION OF NEW YORK CITY, INC., in its own behalf and in behalf of the HANYC BARGAINING GROUP HOTELS* (hereinafter collectively referred to as the EMPLOYER or the ASSOCIATION), and the hotels and motels who are active members of the ASSOCIATION and with respect to whom the UNION (as herein below described) presently has contractual relations, and the hotels, motels, and concessionaires with respect to whom the UNION may be hereafter designated as sole collective bargaining agent for the employees of such hotels, motels, and concessionaires, and who shall become parties hereto by agreeing to this Agreement, each and every such hotel, motel, and concessionaire, including their owners, managers, and operators, respective affiliated and related entities,** successors and assigns being hereinafter referred to as the EMPLOYER, and the NEW YORK HOTEL AND MOTEL TRADES COUNCIL, AFL-CIO, hereinafter called the UNION, in its own behalf and in behalf of its members, now employed or hereafter to be employed by the EMPLOYER.

## WITNESSETH:

WHEREAS, the ASSOCIATION is an organization whose active members are engaged in the hotel business in the City of New York and one of whose objects is to promote fair and harmonious labor relations between hotel keepers and their employees, and

WHEREAS, the parties hereto were signatories to a Collective Bargaining Agreement effective July 1, 2006 which Agreement, by its terms, expired on June 30, 2012;

WHEREAS, the parties hereto, desiring to cooperate to stabilize such labor relations by establishing general standards of wages, hours of service and other conditions of employment, and providing arbitral machinery whereby disputes and grievances between employers and employees may be adjusted without resort to strikes, lockouts or other interferences with the continued and smooth operation of the hotel business, have agreed, pursuant to the provisions of a Memorandum of Understanding dated January 26, 2012 (hereinafter referred to as the "2012 MOU"), to enter into an agreement so as to be effective July 1, 2012 (except as otherwise stated herein), on the terms and conditions hereinafter stated:

NOW, THEREFORE, the parties hereto agree as follows:

1. (A) (1) The term HOTEL as used throughout this Agreement shall include hotels, motels and affiliated facilities.

(2) The term CONCESSIONAIRE as used throughout this Agreement shall include all restaurants, lessees, and contractors operating within HOTELS that employ employees in job classifications covered by this Agreement.

---

** A list of HANYC Bargaining Group Hotels has been provided by the ASSOCIATION. The aforesaid list is current as of January 26, 2012 and is expected to increase on a continuing basis.*

*** Employers who are bound to the 2006-2012 IWA as of January 26, 2012 but are not party to an agreement containing the phrase "affiliated and related entities" shall not be bound to such phrase in this Agreement (except Article 60) by virtue of its inclusion in the preamble. Nothing in this footnote shall alter the obligations of a successor, assign or transferee pursuant to Article 59.*

citizenship status, religion, disability, sexual orientation, union activity or any factor illegal under federal, state or city law is hereby recognized by the parties to this Agreement.

## COMPLAINTS, GRIEVANCES AND ARBITRATION

26. (A) All complaints, disputes or grievances arising between the parties hereto involving questions or interpretation or application of any clause of this Agreement, or any acts, conduct or relations between the parties, directly or indirectly, which shall not have been adjusted by and between the parties involved shall be referred to a permanent umpire(s) to be known as the Impartial Chairperson, and his/her decision shall be final and binding upon the parties hereto. Any questions regarding arbitrability, substantive, procedural, or otherwise, or regarding the Impartial Chairperson's jurisdiction or authority, shall be submitted to the Impartial Chairperson in accordance with this Article. Any such complaint, dispute or grievance involving an EMPLOYER member of the ASSOCIATION shall, in the first instance, be submitted to the Labor Manager who will be appointed and employed by the ASSOCIATION, to consider and adjust with a duly accredited representative of the UNION, for their joint consideration and adjustment; if they agree, such decision shall be binding on the parties hereto. The meeting before the Labor Manager shall, at the request of either party, be scheduled for the first mediation date following the earlier of a hotel level meeting, or the expiration of a period of five (5) business days after the request for a hotel level meeting by either party. Should the matter not be resolved by the Labor Manager and the representative of the UNION, it shall then be referred to the Impartial Chairperson as aforesaid.

(B) In the event of a willful default by either party in appearing before the Impartial Chairperson, after due written notice shall have been given to the said party, the Impartial Chairperson is hereby authorized to render a decision upon the testimony of the party appearing.

(C) Non-ASSOCIATION member hotel and concessionaire EMPLOYER complaints, disputes, or grievances are to be taken directly to the Impartial Chairperson.

(D) If any EMPLOYER experiences an unanticipated emergency which justifies relief from the provisions of Article 45(B) the matter—if unresolved between the EMPLOYER and the UNION—may be submitted to the Impartial Chairperson who may grant such relief as s/he deems proper. If relief is granted, the Impartial Chairperson may make such provisions for the employees involved as s/he deems appropriate. The Impartial Chairperson may not grant relief predicated solely upon economic factors.

(E) The parties consent that any papers, notices or process, including subpoenas, necessary or appropriate to initiate or continue an arbitration hereunder or to enforce or confirm an award, may be served by ordinary mail directed to the last known address of the parties or their attorneys, or when authorized by the Impartial Chairperson, by telegram, fax, e-mail or telephone.

(F) The parties consent that all arbitration hearings shall be heard at the Office of the Impartial Chairperson located at 321 West 44th Street in the City of New York, or at such other place as the Impartial Chairperson may designate.

(G) The Impartial Chairperson may call such arbitration hearing on giving five (5) days' notice to all of the interested parties. The Impartial Chairperson, however, may call a hearing on shorter notice if s/he deems it appropriate.

(H) The parties hereby expressly waive the requirements regarding the Arbitrator's oath and the manner and time for the service of notice of hearing contained in the Civil Practice Law and Rules of the State of New York and agree and consent that the Impartial Chairperson may proceed with the hearing.

(I) The compensation of the Impartial Chairperson and his/her proper and necessary expenses shall be shared and paid equally by the ASSOCIATION and the UNION.

(J) Should the Impartial Chairperson resign, refuse to act, or be incapable of acting, or should the office become vacant for any reason, the ASSOCIATION and the UNION shall immediately and within five (5) days after the occurrence of such vacancy, designate another person to act as such Impartial Chairperson. If they fail to agree, the United States District Court, Southern District of New York, shall, upon application of either party, on due notice to the other, summarily make such appointment.

(K) The decision rendered by the Impartial Chairperson shall have the effect of a judgment entered upon an award made, as provided by the Arbitration Laws of the State of New York, entitling the entry of a judgment in a court of competent jurisdiction against the defaulting party who fails to carry out or abide by such decision.

(L) Effective for instances which arise after the effective date of this Agreement, an EMPLOYER found by the Impartial Chairperson to have (1) shown a pattern of repeated violations of a similar type and nature which supports a finding of an intentional and bad faith contractual violation; or (2) willfully violated a clearly defined contractual provision or hotel-specific established practice relating to scheduling, layoff, recall, wage or a wage-related provision, and that in either case above, i.e., (1) or (2), where such violation has resulted in a monetary award to the affected employees the Impartial Chairperson shall award to such employees an additional amount equal to fifteen percent (15%) of the awarded amount. It is understood that this provision shall not apply to situations where the Impartial Chairperson finds that the EMPLOYER has relied upon a reasonable good faith interpretation of the Agreement(s).

## DISCHARGE AND DISCIPLINE

27. (A) General

(1) The EMPLOYER shall have the right to discharge or discipline any employee. The UNION may question whether an employee's discharge or discipline was for just cause.

(2) In the case of ASSOCIATION Labor Relations Group member EMPLOYERS, the UNION shall submit the matter to the Labor Manager within ten (10) days after a discharge and, should the matter not be adjusted by the Labor Manager under the procedure set forth in Article 26, the UNION may submit the matter to the Impartial Chairperson within ten (10) days after the conference before the Labor Manager for decision as any other dispute under this Agreement. In the case of non-ASSOCIATION Labor Relations Group member EMPLOYERS, the UNION shall submit the

### VOLUNTARY POLITICAL ACTION FUND

56. The EMPLOYER agrees to deduct from the paycheck of its participating employees voluntary authorized contributions to the UNION's Political Action Committee. The contribution deduction shall be made once for each month during which the employee has performed compensated services. The contribution amounts as authorized shall be deducted at the same time and in the same manner as deductions made for employees' UNION membership dues. Said contributions shall be remitted to the UNION's Political Action Committee and sent care of the UNION's Controller, at the same time as UNION membership dues payments are remitted to the UNION after the last day of the preceding month. The EMPLOYER shall transmit all aggregate contribution deductions for that month in one (1) check, together with the names and social security numbers of each employee on whose behalf a deduction is made, and the amount of the employee's contribution deduction. A sample copy of the form of voluntary contributions deduction authorization is attached.

### CONVERSION TO RESIDENTIAL USE

57. (A) If, during the term of this Agreement, a signatory Hotel is converted to residential use (e.g., a condominium or co-operative use of the building, apartment rental units, etc.) the EMPLOYER shall pay to the affected employees, i.e., those who suffer a permanent loss of employment due to such conversion, severance under the following terms: fifteen (15) days for each year of service, calculated and paid under the procedures of Article 52(B). The benefit funds shall receive a payment, calculated in accordance with Article 52(B), for each affected employee.

(B) In the event that the Hotel's entire premises are affected by the conversion to residential use, then employees eligible for the enhanced severance above shall, as a condition of receiving such severance payment, execute a separation document releasing the parties to this Agreement from any liability and future obligations, such as recall rights, under this Agreement.

(C) In cases of a partial conversion of the Hotel's premises to residential use, then the enhanced severance provisions contained herein shall only apply to employees affected by such conversion.

### AUTHORITY TO ENFORCE CONTRACT

58. All rights, benefits, privileges and/or immunities granted or secured by this Agreement to the UNION or any of its affiliates or members can be enforced only by or through the New York Hotel and Motel Trades Council, AFL-CIO, the UNION herein.

### SUCCESSORS AND ASSIGNS

59. (A) This Agreement shall be binding upon the successors and assigns of the parties hereto, and no provisions, terms, or obligations herein contained shall be affected, modified, altered, or changed in any respect whatsoever by the consolidation, merger, sale, transfer, or assignment of either party hereto or affected, modified, altered or changed in any respect whatsoever by any change of any kind in the legal status, ownership, or management of either party hereto. Any successor EMPLOYER shall assume all of

the obligations under this Agreement of the prior operator of the hotel or concession to the employees, the UNION or any of the funds to which EMPLOYERS are required to contribute hereunder.

(B) EMPLOYER shall make it a written material condition of any transaction of any kind whatsoever which transfers majority ownership, management or operational control of the Hotel or Concessionaire such that the party ("transferee") assuming such majority ownership, management or operational control must assume and be bound in writing to this Agreement.

(C) A successor, assign or transferee shall assume all obligations of the predecessor, assignor or transferor, including this Agreement and those agreements and practices supplementing this Agreement. Subject to Paragraph (D), every successor, assign and transferee shall execute an assumption agreement substantially similar to the following not less than ten (10) business days prior to any transfer or change covered by this Article.

*ASSUMPTION AGREEMENT*

*Agreement made as of this____day of ____ 20__, by and between [PURCHASER NAME] and [MANAGER/OPERATOR NAME, IF DIFFERENT] its managing agent, on their own behalf and on behalf of any affiliated or related entity and any current or future owner, manager or operator, and their respective successors or assigns (collectively, "Purchaser"), and the New York Hotel and Motel Trades Council, AFL-CIO ("Union").*

*Whereas, Purchaser has agreed to purchase the [HOTEL NAME] ("Hotel") from the current owner, [SELLER NAME] ("Seller");*

*Whereas, the Seller is bound to, inter alia, Article 59 of a collective bargaining agreement known as the Industry Wide Agreement between the Union and the Hotel Association of New York City, Inc. known as the Industry Wide Collective Bargaining Agreement ("IWA");*

*Whereas, Article 59 of the IWA requires successors, assigns and transferees ("successor") to be bound to the IWA;*

*Whereas, the Purchaser agrees that it is a successor to the obligations under the IWA;*

*Now, therefore it is agreed:*

*1. Purchaser agrees that it shall retain all current bargaining unit employees, whose employment will continue uninterrupted and without loss of seniority, compensation, benefits or fringe benefits, and with no adverse effect on other terms and conditions of employment, subject to the IWA and applicable law.*

*2. Purchaser agrees that, effective as of the date of the closing, it has assumed, adopted and is bound by all of the terms, both economic and non-economic, of the IWA and those agreements and practices supplementing the IWA.*

Case 1:16-cv-05248-LAP Document 37-3 Filed 09/27/17 Page 12 of 18

*3. By virtue of the closing, Purchaser acknowledges that no new verification of currently valid I-9 forms will be necessary.*

*4. Effective immediately any and all disputes between the parties or regarding the interpretation or application of this Agreement shall be subject to the grievance and arbitration provisions of the IWA, the entirety of which is incorporated herein by reference.*

| *FOR THE UNION* | *FOR THE PURCHASER (on behalf of each owner, operator and manager)* |
|---|---|
| *By:* ______________________ | *By:* ______________________ |
| *Name:* ______________________ | *Name:* ______________________ |
| *Title:* ______________________ | *Title:* ______________________ |
| *Authorized to Sign* | *Authorized to Sign* |
| *Dated:* ______________________ | *Dated:* ______________________ |

(D) In the event an Owner of a Hotel is not the EMPLOYER of the Hotel's employees nor otherwise bound by the IWA, the Owner shall be (i) bound by the Successor and Assigns, Accretion, and Neutrality and Card Check provisions of IWA (ii) shall be secondarily liable for any obligations of any EMPLOYER in the Hotel under the IWA, and (iii) shall be bound by the arbitration provisions of the IWA as they relate to any dispute regarding these provisions. Such Owner shall be required to sign an agreement with the UNION reaffirming such, including the obligation to retain all bargaining unit employees, whose employment will continue uninterrupted without loss of seniority, compensation, benefits, or other terms and conditions of employment subject to the IWA and applicable law.

(E) Not less than thirty (30) days prior to the closing of the transaction, the EMPLOYER shall give the UNION notice in writing of the possibility of a transaction between the EMPLOYER and the potential transferee and the notice to the UNION will provide the details then known to the EMPLOYER as to the nature, expected closing date, and identity of the parties to the transaction. Not less than ten (10) business days prior to the closing of the transaction, the EMPLOYER shall give the UNION notice in writing of the transaction between the EMPLOYER and the transferee and the notice to the UNION will provide the full and complete identity of the transferee, together with a duly executed copy of the pertinent portion of the transaction agreement between the EMPLOYER and the transferee pursuant to which the transferee agrees to assume this Agreement.

(F) Said notices will be held by the UNION in strict confidence and the UNION, upon request of the EMPLOYER, will agree to a confidentiality pledge upon terms mutually acceptable to the EMPLOYER and the UNION, provided, however, that such confidentiality pledge will be ineffective upon the EMPLOYER'S violation of this Article 59. If the UNION is provided with a signed copy of the portion of the agreement where the transferee agrees to assume this Agreement, the UNION will not contact the transferee prior to the closing.

(G) The EMPLOYER and UNION agree that if a determination is made by the Impartial Chairperson that a violation of Article 59 has occurred, then in such case, the violation will be deemed to be irreparably harmful to the UNION and its members. In such event, the UNION may seek such relief as is necessary to redress and remedy such violation and irreparable harm, including, but not limited to, the award of monetary damages and/or injunctive relief either from the Office of the Impartial Chairperson, the National Labor Relations Board, a court of competent jurisdiction or such other forum as deemed appropriate by the UNION.

## ACCRETION AND NEUTRALITY/CARD CHECK

60. (A) Accretion

(1) EMPLOYER and its affiliated and related entities agree to the accretion of any and all hotel or concessionaire properties which come to be owned and/or managed only in the five (5) boroughs of New York City to the bargaining unit(s) presently or hereafter covered by the Industry Wide Agreement or any successor collective bargaining agreement thereto, and that all of the terms and conditions set forth in the Industry Wide Agreement or its successor shall be immediately applicable to the accreted bargaining unit(s).

(2) The parties acknowledge that they have negotiated and exchanged valuable consideration in reliance upon the lawfulness and validity of their agreement but recognize the complexity and change inherent in the legal doctrine of accretion. Nevertheless, in the event that any accretion at a hotel or concessionaire pursuant to these provisions, applied to the fullest extent of that legal doctrine, should be ruled ineffective, invalid, or unenforceable by competent legal authority, then the parties hereby agree that the neutrality and card count agreement annexed hereto as Addendum IV shall apply to that hotel or concessionaire. For the purposes of this provision, "competent legal authority" shall mean the Office of the Impartial Chairperson, the Regional Director for Region 2 or 29 of the National Labor Relations Board ("NLRB"), the United States District Courts for the Southern or Eastern Districts of New York, or the United States Court of Appeals for the Second Circuit.

(3) The parties agree that they shall meet to review and discuss such particular facts and circumstances as either party may contend warrants mutually agreed upon revisions to the provisions of the Industry Wide Agreement, or successor collective bargaining agreement as the case may be.

(B) Neutrality/Card Check

(1) In addition to and without limiting the other provisions of this Article 60, EMPLOYERS and their affiliated and related entities shall abide and be bound by the neutrality and card check provisions annexed hereto as Addendum IV and incorporated herein by reference effective July 1, 2001 with respect to Hotels and Concessionaires in the five (5) boroughs of New York City and effective February 3, 2012 with respect to Hotels and Concessionaires in the remainder of the Greater New York City Metropolitan Area, Northern and Central New Jersey, and the New York State Capital District, defined below.

(2) The "Greater New York City Metropolitan Area, Northern and Central New Jersey and the New York State Capital District" shall be defined as and limited to the following counties: in New York State: Albany, Bronx, Dutchess, Greene, Kings, Nassau, New York, Orange, Queens, Putnam, Rennsselaer, Richmond, Rockland, Saratoga, Schenectady, Suffolk, Sullivan, Ulster, Washington and Westchester; in New Jersey: Bergen, Essex, Hudson, Hunterdon, Mercer, Middlesex, Morris, Passaic, Somerset, Sussex, Union and Warren.

(3) The EMPLOYER shall notify the UNION, in writing, at least thirty (30) days prior to the commencement of hiring of employees in a property covered by this Article. Such notice must contain the name, address and number of rooms in the hotel; the projected opening date of the hotel; the name(s) of each owner, management company and operator of the hotel; the number of employees expected to be hired in each classification and the wages and benefits available to applicants, if hired; and information on the application process for such positions.

(C) The EMPLOYER may not evade its obligations under the IWA or Article 60 by entering into any transaction nor by creating any entity. Any such act shall be a violation of this Agreement, and the same, including any and all disputes in reference thereto or with respect to any of the foregoing provisions, shall be submitted to the Impartial Chairperson as any other dispute under this Agreement.

(D) Article 60(A) and/or Article 60(B) shall not apply to a bona fide franchise arrangement. Nothing herein is intended to create a "franchise exception" as to any arrangement, including a franchise arrangement, which would otherwise be subject to Article 60 or Addendum IV. Nothing herein is intended to create a "franchise exception" as to any Hotel or Concessionaire which would otherwise be subject to Article 60 or Addendum IV.

(E) Impartial Chairperson Decision #2011-32 ("Parsippany Decision") shall be deemed null and void and of no legal, arbitral or contractual effect with regard to the Hotel Association of New York City, Inc. Bargaining Group Hotels for those hotels which were members of the bargaining group as of January 26, 2012 and Hotels and Employers who are otherwise bound to the 2012 IWA (e.g. through a "Me Too" Agreement) as of January 26, 2012. All other Hotels and Employers shall continue to be subject to the Parsippany Decision notwithstanding anything to the contrary in this Article or Addendum IV.

## MAINTENANCE AND ELECTRICAL WORK

61. It is intended that employees to be classified as in the "Maintenance Department" shall include those engaged in doing plastering, mason work, tile setting, lathing and cement work; carpentry; plumbing and steamfitting; upholstering and mattress making; painting, furniture varnishing and paperhanging; operating and maintaining house radio systems; mechanical work on elevators; machine work, locksmithing and key work; silversmithing, coppersmithing and tinsmithing; and boiler repair work.

The painting, decorating and paperhanging includes the service of painting, decorating, woodfinishing, paperhanging, and preparatory work incidental to each of the aforementioned as follows:

be empowered to make a final and binding decision on any and all matters not resolved by the parties not later than forty-five (45) days after submission of this matter.

In the event that either party fails to agree to submit this matter to the Impartial Chairperson, such party may submit the matter to the United States District Court for the Southern District of New York for resolution by the Court.

## ADDENDUM III

Notice to all Contributing Employers of The New York Hotel Trades Council and Hotel Association of New York City, Inc. Pension Fund:

The Multi-Employer Pension Plan Amendments Act of 1980 ("the Act") imposes a potential liability upon an employer who "withdraws" as a contributing employer from a pension fund. "Withdrawals" and the acts/conditions/circumstances occasioning same are defined in the Act. In general, a contributing employer "withdraws" when it ceases to be obligated to make periodic contributions to a pension fund due to a cessation or, in some cases, a diminution of operations or after a sale, transfer of its business, or after a union is decertified as bargaining agent. All contributing employers are urged to obtain legal advice as to the foregoing withdrawal liability.

## ADDENDUM IV

Company Name

Address

Dear ____________:

This letter agreement will confirm the discussions we have had regarding the procedures to be followed by the New York Hotel & Motel Trades Council ("UNION") to organize certain employees at hotels and concessionaires within the five (5) boroughs of New York City at which Company has or acquires an ownership, management or control interest on or after July 1, 2001 and hotels and concessionaires in the Greater New York City Metropolitan Area (other than the five (5) boroughs of New York City), Northern and Central New Jersey and the New York State Capital District at which the Company has or acquires an ownership, management or control interest on or after February 3, 2012 and the UNION does not have representational rights ("Hotel"), and various other matters, including the resolution of disputes related to such organizational drive and/or the terms of this letter agreement ("Agreement") and any subsequent collective bargaining agreement.

1. Use of Impartial Chairperson

The Impartial Chairperson of the Hotel Industry of New York City ("Impartial Chairperson") will conduct a "card count" to determine whether the UNION has obtained valid cards from a majority of full-time and regular part-time employees of the Hotel, employed in job classifications listed in Schedule A to the Industry Wide Agreement between the UNION and the Hotel Association of New York City, Inc. ("IWA"), designating the UNION as their representative for purposes of collective bargaining (the "Cards") and to certify the result of his/her card count, all in accordance with the procedures

Case 1:16-cv-05248-LAP Document 37-3 Filed 03/27/17 Page 16 of 18

set forth in Section 3 below. Full-time and regular part-time employees of the Hotel employed in job classifications listed in Schedule A shall be referred to throughout this Agreement as "Employees".

The Impartial Chairperson also will resolve any and all disputes of any kind whatsoever arising out of this Agreement, or concerning the meaning or interpretation of any and all matters discussed herein, including, but not limited to, the terms and provisions of any collective bargaining agreement entered, or to be entered into, by and between the Hotel and the UNION. Any costs incurred by the parties in instituting proceedings before the Impartial Chairperson, or defending against the same, shall be the responsibility of the respective party. Costs charged by the Impartial Chairperson shall be shared and paid equally by the parties. Any arbitration award or decision issued by the Impartial Chairperson, written or otherwise, shall be final and binding upon the parties, and subject to the provisions of Article 75 of the New York Civil Practice Law and Rules ("CPLR") including, but not limited to, the procedures to vacate or modify an award pursuant to Section 7511 of the CPLR, and shall be enforceable in a court of competent jurisdiction.

2. Union Access to the Hotel

The UNION will begin its organization of the Hotel's employees at any time upon notice to the Hotel's General Manager. The UNION will be permitted to have its organizers or representatives enter the Hotel to meet with Employees during the Employees' non-working times (for example, before work, after work, and during shift changes, meals and breaks) and/or during such other periods as the parties may mutually agree upon in writing. The UNION may engage in organizing efforts in non-public areas of the Hotel such as the Employee meal rooms and locker rooms or such other non-public areas as the parties may mutually agree upon.

Within three (3) days following receipt of the above described written notice of intent to organize Employees, the EMPLOYER will furnish the UNION with a complete list of such Employees, including both full and part-time Employees, showing their job classifications and departments, work schedules, wages, and benefits, and the home addresses and telephone numbers of all Employees. Thereafter, the EMPLOYER will promptly provide updated lists for the duration of the organizing drive.

There shall be no lockouts of the Employees by the Hotel and the UNION shall not cause any disruption of work by the Employees during the organizing activity, nor shall there be any picketing, strikes, slow downs or other work stoppages at the Hotel by or caused by the UNION for any purpose, including organizing, contract negotiations, dispute publication or enforcement of the terms of this Agreement. The "no lockout, no strike" provisions hereof shall not apply in the event either party fails to abide by an award or decision of the Impartial Chairperson within three (3) business days after issuance. Both the Hotel and the UNION agree to respect the National Labor Relations Act ("NLRA") Section 7 rights of employees during the UNION'S organizing drive, and neither party shall, or be required to, act in contravention of those rights. The Hotel specifically agrees that its supervisory employees, its agents and/or its representatives will not act or make any statements that will directly or indirectly imply the Hotel's opinion as to whether or not the employees should support the UNION or as to the reputation of the

UNION or any of its officers and affiliate local unions or as to the reputation of any of the officers of the UNION'S affiliate local unions and/or their parent unions.

3. Determination of Majority Status

At any time after the commencement date of the UNION'S organizing effort, the UNION may request that a card count be conducted by the Impartial Chairperson. The UNION shall initiate that process by advising the Hotel's General Manager in writing ("Notification Letter") that it represents a majority of the full-time and regular part-time employees employed by the Hotel in the job classifications set forth in the IWA Schedule A. The date of the UNION'S Notification Letter shall be the date ("Notification Date") used for purposes of determining the composition of the list of the names of the Employees to be furnished by the Hotel to the Impartial Chairperson, so that all full-time and regular part-time Employees of the Hotel employed on or before the Notification Date will be the only Employees whose names will appear on the list.

Within forty-eight (48) hours of the delivery of the Notification Letter by the UNION to the Hotel indicating its majority status, the UNION shall notify the Impartial Chairperson in writing that his/her services are requested for purposes of conducting a card count. The UNION shall immediately confirm to the Hotel's General Manager that the Impartial Chairperson has retained jurisdiction of the card count proceeding. As soon as practicable thereafter, but in any event no later than seven (7) days after the date of the UNION'S written card count request made to the Impartial Chairperson, the UNION shall furnish to the Impartial Chairperson the Cards it has obtained from the Employees, and the Hotel shall furnish the Impartial Chairperson the list containing the names and job classifications of Employees employed as of the date of the UNION'S Notification Letter (with a copy to the UNION) together with copies of official employment documents containing the signatures of each of the Employees (e.g. Forms I-9, Form W4 or similar documents), in care of the Office of the Impartial Chairperson, 321 West 44th Street, New York, New York 10036.

Within forty-eight (48) hours after his/her receipt of the documents described above, the Impartial Chairperson shall conduct a card count by checking the Cards against the list of Employees and by comparing the Employees' names and signatures appearing on the Cards to the names and signatures appearing on the employment documents supplied to the Impartial Chairperson by the Hotel. At the conclusion of the card count, the Impartial Chairperson shall inform the parties of the results of his/her count and shall certify in writing that either the UNION has or has not been selected by a majority of eligible Employees of the Hotel as their collective bargaining representative. Both the Hotel and the UNION agree to abide by the determinations made by the Impartial Chairperson regarding any challenges either to the validity of the Cards, the eligibility of Employees, the appropriateness of the unit and/or to the majority status of the UNION.

If, after the conduct of the card count, the UNION fails to be certified by the Impartial Chairperson as the majority representative of the eligible Employees, this Agreement shall be deemed to continue in full force and effect, unless it is otherwise terminated in writing by mutual agreement of the parties. Notwithstanding any of the foregoing seemingly to the contrary, the Hotel and UNION also agree that the Impartial Chairperson shall be empowered to issue such remedial orders as are consistent with applicable NLRB standards and necessary during and after the pendency of the UNION'S orga-

nization drive to ensure the maintenance of the neutral environment and/or to penalize the Hotel or the UNION for violating their obligations hereunder, including an order to bargain in accordance with applicable NLRB standards, and/or monetary or punitive damages to either party.

If the UNION is certified as the majority representative of the Employees, the Hotel must recognize the UNION and the Hotel and the UNION will commence negotiations within seven (7) calendar days of the date of the certification, at a mutually agreeable time and place, for a collective bargaining agreement covering wages, hours and other terms and conditions of employment (the "Agreement").

I believe that the above correctly describes our discussions on these matters. Please signify your concurrence by signing where indicated below and returning one copy to me, the other being for your files.

Very truly yours,

Peter Ward
President

Executed, Agreed and Accepted
on behalf of Hotel/Company

By: ______________________

Name: ______________________

Title: ______________________

Date: ______________________

## ADDENDUM V

Extra Rooms/Wage Equalization Lawsuit

a. Effective August 1, 1990:

(i) Room Attendants shall no longer be assigned to make up extra rooms without being compensated for them at the extra room rates specified in the Agreement.

(ii) The base weekly rates of pay for both bath and night shift room attendants will be equalized to the base weekly rates of pay of day shift room attendants.

b. In consideration of the foregoing, the parties shall immediately enter into a stipulation of settlement, and the Trades Council shall do everything necessary in accordance therewith, withdrawing and terminating the various actions in the United States District Court for the Southern District of New York entitled and referenced as: New York Hotel and Motel Trades Council, AFL-CIO, et al. v. Hotel Association of New York City, Inc. et al., 85 Civ. 0216, 0222, 0223, 0225, 0226, 0227, 0228, 0229, 0239, 0231, 1020 and 9925 and all proceedings relating thereto, including any and all charges or complaints filed with the Equal Employment Opportunity Commission, New York State Division of Human Rights and New York City Commission on Human Rights against any EMPLOYER