# EXHIBIT F

OFFICE OF THE IMPARTIAL CHAIRPERSON
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036
TEL: (212) 541-7212  FAX: (212) 541-9356

#2015-38
Carter Hotel
July 3, 2015
Page 1 of 5

**EMPLOYER**: Carter Hotel

HTC Case #U15-228/ Hearing requested by the New York Hotel and Motel Trades Council, AFL-CIO ("Union") against the Carter Hotel for failure and refusal to provide the Union with information since on or about April 20, 2015.

Hearing held at the Impartial Chairperson office on June 11, 2015.

**APPEARANCES:**

| | |
|---|---|
| For the Employer: | Jon Cruz, General Manager |
| Counsel for the Employer:<br>By: | Clifton Budd & DeMaria, LLP<br>Arthur J. Robb, Esq.<br>Nadav Zamir, Esq. |
| Counsel for the Receiver: | Stroock & Stroock & Lavan, LLP<br>Beth A. Norton, Esq. |
| For the New York Hotel & Motel Trades Council, AFL-CIO:<br>Counsel:<br>By: | <br>Pitta & Giblin LLP<br>Joseph F. Farelli, Esq. |
| For the Union: | Richard Maroko, Esq.<br>Rolando Ruiz |

\*   \*   \*

## DECISION AND AWARD

On June 12, 2014, CF43 Hotel LLC, (the "Hotel"), through its designated signatory Jack Graff, signed an Assumption Agreement in connection with its acquisition of the Hotel Carter. Under that Agreement, the Hotel agreed to be bound by the Industry Wide Agreement ("IWA"). A copy of the Assumption Agreement is attached to this Award.

On April 9, 2015, the Union sent a "Request For Information" ("RFI") to Jon Cruz ("Cruz"), at the Hotel Carter. A copy of that RFI is attached to this Award. After receiving the Union's RFI on April 9, 2015, the Hotel did nothing to provide any of the information requested. Although a Hearing on the merits of the case had been scheduled for June 11, 2015, the Hotel did not raise any objection with regard to any aspect of that information request. Nor was any request made to the Office of the Impartial Chairperson for a pre-Hearing determination with regard to any objection the Hotel had with regard to the RFI. Instead, for the first time, on June 11, 2015, the Hotel claimed that the information request was a nullity, not to be complied with because it lacked relevance. At the Hearing, the Union requested an explanation from the Hotel as to why the information was not relevant to any of the eight (8) separate requests contained in the RFI. The Hotel's response was that it wished to brief the issue and that it would set forth its objections at that time, and agreed that the Union could submit a reply brief, which it has done.

**OFFICE OF THE IMPARTIAL CHAIRPERSON**
**321 WEST 44TH STREET, SUITE 400**
**NEW YORK, NY 10036**
**TEL: (212) 541-7212   FAX: (212) 541-9356**

#2015-38
Carter Hotel
July 3, 2015
Page 2 of 5

I have received the Hotel's brief dated June 19, 2015. Accompanying that brief are three (3) exhibits. They are: 1) the aforementioned Assumption Agreement, 2) the aforementioned Request for Information, and, 3) an affidavit from Jack Graff, "In support of Respondent's letter brief to strike Petitioner's Request for Information". I have neither read nor considered the "Graff Affidavit" as it is an attempt to produce evidence not produced by the Hotel at the time of the hearing. Its submission is improper. The Hotel had an opportunity to produce Graff at the Hearing and to have him testify with regard to facts that the Hotel now wishes to introduce after the close of the hearing. The Hotel instead produced Cruz, who testified now at the Hearing on June 11, 2015 and was subject to cross-examination by the Union. The Hotel attempts to raise a new issue, one not raised by the Hotel at the Hearing.

The only issue before me is the relevance of the RFI. The Hotel has not addressed the specific relevance of any of the items in the RFI and argues only generalities.

The Union has submitted a brief in reply to the Hotel brief. A good part of the Union's brief is devoted to the Hotel's argument in its brief that the Hotel and related entities are not bound by the card check/neutrality provisions of the IWA. The Union refers to this argument as a "red herring". I agree, for the reasons set forth in this Award.

Similarly, the Hotel claims in its brief that Graff (who signed the Assumption Agreement) had no authority to bind any entity other than the Hotel to the Assumption Agreement, an argument that patently lacks merit, when considered against the contractual language and Assumption Agreement involved in this case.

The Hotel argued at the Hearing that the Union was seeking to organize other hotels in which Mr. Chetrit had an interest, and that seeking that information by means of the RFI was improper. This argument, without naming Mr. Chetrit specifically, is found in the Hotel's brief in the Hotel's argument that the Union does not seek data to address grievances of bargaining unit employees at the Hotel, "but for the purpose of organizing non-unit employees at other properties". This argument ignores the relevant contractual language. It too is without merit, as Article 60 and Addendum IV were designed and intended to enable the Union to organize non-unit employees at other properties and related entities.

## CONTRACTUAL PROVISIONS

Relevance of the RFI is determined in large part by the Union's rights under the applicable contract provisions.

Article 59 of the IWA provides, in part:

(C)   A successor, assign or transferee shall assume all obligations of the predecessor, assignor or transferor, including this Agreement and those agreements and practices supplementing this Agreement. Subject to Paragraph (D), every successor, assign and transferee shall execute an assumption agreement substantially similar to the following not less than ten (10) business days prior to any transfer or change covered by this Article.

OFFICE OF THE IMPARTIAL CHAIRPERSON
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036
TEL: (212) 541-7212   FAX: (212) 541-9356

#2015-38
Carter Hotel
July 3, 2015
Page 3 of 5

On December 15, 2014, the Hotel executed an Assumption Agreement signed by Jack Graff "FOR THE HOTEL [on behalf of each owner, operator and manager]".

The Assumption Agreement attached hereto, states that Jack Graff was authorized to sign.

Subsequently, in January 2015, the Hotel assigned an interest in the Hotel to 250 West 43 Owner LLC; 250 West 43 Owner II LLC and 250 West 43 Owner III LLC.

By virtue of Article 59 of the IWA, that assignment required the Hotel to execute a second Assumption Agreement, the pertinent part of which provided that:

> Agreement made as of this ___ day of January 2015, by and among 250 West 43 Owners LLC as to a twenty-five percent (25%) undivided interest, 250 West 43 Owners II LLC as to a thirty-seven and one-half percent (37.5%) undivided interest and 250 West 43 Owners III LLC as to a thirty-seven and one-half percent (37.5%) undivided interest, as tenants in common (collectively, "Owner"), on their own behalf and on behalf of their affiliated or related entities and current or future owner, operator, or manager of the Carter Hotel, and their respective successors or assigns (collectively, "Hotel")  and the New York Hotel and Motel Trades Council, AFL-CIO ("Union").
>
> 2.   The Hotel agrees that, effective as of the date of the closing, it has assumed, adopted and is bound by all of the terms, both economic and non-economic, of the IWA.

Article 60 of the IWA, the Accretion and Neutrality/Card Check provisions were designed to assist the Union in organizing and representing employees and clearly binds the Employer and its affiliated and related entities.  Article 60 provides:

> (A) Accretion
>
> (1) EMPLOYER and its affiliated and related entities agree to the accretion of any and all hotel or concessionaire properties which come to be owned and/or managed only in the five (5) boroughs of New York City to the bargaining unit(s) presently or hereafter covered by the Industry Wide Agreement or any successor collective bargaining agreement thereto, and that all of the terms and conditions set forth in the Industry Wide Agreement or its successor shall be immediately applicable to the accreted bargaining unit(s).
>
> (2) The parties acknowledge that they have negotiated and exchanged valuable consideration in reliance upon the lawfulness and validity of their agreement but recognize the complexity and change inherent in the legal doctrine of accretion. Nevertheless, in the event that any accretion at a hotel or concessionaire pursuant to these provisions, applied to the fullest extent of that legal doctrine, should be ruled ineffective, invalid, or unenforceable by competent legal authority, then the parties hereby agree that the neutrality and card count agreement annexed hereto as Addendum IV shall apply to that hotel or concessionaire. For the purposes of this provision, "competent legal authority" shall mean the Office of the Impartial Chairperson, the Regional Director for Region 2 or 29 of the National Labor Relations Board ("NLRB"), the United States District Courts for the Southern or Eastern Districts of New York, or the United States Court of Appeals for the Second Circuit.
>
> (3) The parties agree that they shall meet to review and discuss such particular facts and circumstances as either party may contend warrants mutually agreed upon

OFFICE OF THE IMPARTIAL CHAIRPERSON
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036
TEL: (212) 541-7212   FAX: (212) 541-9356

#2015-38
Carter Hotel
July 3, 2015
Page 4 of 5

revisions to the provisions of the Industry Wide Agreement, or successor collective bargaining agreement as the case may be.

(B) Neutrality/Card Check

In addition to and without limiting the other provisions of this Article 60, EMPLOYERS and their affiliated and related entities shall abide and be bound by the neutrality and card check provisions annexed hereto as Addendum IV and incorporated herein by reference effective July 1, 2001 with respect to Hotels and Concessionaires in the five (5) boroughs (5) of New York City and effective February 3, 2012 with respect to Hotels and Concessionaires in the remainder of the Greater New York City Metropolitan Area, Northern and Central New Jersey, and the New York State Capital District, defined below.

The Union claims it seeks, by means of its RFI, information that would enable it to ascertain what entities, if any, are affiliated or related to the Hotel and which properties it owns, manages, operates or controls that may be subject to the card check/neutrality provisions of the IWA to enable it to enforce its rights under Article 60 and Addendum IV of the IWA[1].

I find the Hotel's argument totally meritless. It appears to be an attempt to impede the Union's exercise of its contractual rights. It is understandable that the Hotel is unhappy with the Union's attempts to organize affiliates or related entities and concessionaires, but that is the Union's right under the Assumption Agreement and the IWA, which clearly binds the Hotel.

## PRINCIPLES INVOLVED IN DETERMINING RELEVANCE OF THE RFI

Since at least 1967, the law has been clear from decisions of the National Labor Relations Board and Federal Courts that a Union is charged with the statutory duty of representing employees in the bargaining unit, and in the exercise of that duty, it has the right to information as to wages and similar matters, which are relevant to or reasonably necessary, to discharge its bargaining obligation, N.L.R.B. v. Truitt Manufacturing Company, 351U.S.149; Fafnir Bearing Co. v. N.L.R.B. 362F.2d716 (C.A. 2). The NLRB has adopted a "presumably relevant" or "arguably relevant" standard in applying the test of relevance and the Board applies a liberal discovery type standard. Additionally, the Union is not required to show the precise relevance of such information unless effective employer rebuttal is presented. See, Curtiss-Wright Corporation v. N.L.R.B. 145N.L.R.B.152, enfd. 347F.2d61 (C.A. 3). See also N.L.R.B. v. Acme Industrial Co. 385U.S.432 (1967) and Otis Elevator Company and Local 453 International Union etc. 2-CA-11280 (1968).

The Hotel's post-hearing brief does not address the issue it raised at the Hearing, which is the relevance of the items in the RFI. It argues that the Union has not come forward with any evidence to contradict the facts, which the Hotel intends to establish through the post-Hearing affidavit of Graff, which I rejected as improper. The issue before me is not whether the Union can establish that Graff had any authority to bind any entity other than the Hotel. The issue is whether the items contained in the RFI are relevant to the Union's bargaining duty. To make that determination one must examine the provisions in the IWA, which the Hotel has accepted

---

[1] Addendum IV provides procedures to be followed to allow the Union to organize certain employees at hotels and concessions at which the signatory hotel or company has, or acquires, an ownership, management or contract interest, on or after July 1, 2001. It is applicable to the Hotel in this case, and the information sought in the RFI is clearly relevant to Addendum IV to which the Hotel is bound.

OFFICE OF THE IMPARTIAL CHAIRPERSON
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036
TEL: (212) 541-7212  FAX: (212) 541-9356

#2015-38
Carter Hotel
July 3, 2015
Page 5 of 5

by virtue of the Assumption Agreement. Most relevant are Article 59, the "Successors and Assigns" provision, Article 60, the "Accretion and Neutrality/Card Check" provision, and "Addendum IV", which involves organization attempts by the Union at Hotels and Concessionaires at which a company has, or acquires, an ownership, management or control interest. A review of each of the eight (8) items contained in the Union's RFI shows that they are clearly relevant to the Union's collective bargaining rights and duties under the aforementioned IWA provisions. Those 8 items clearly meet the standards of relevance applied by the NLRB and the Courts.

For the reasons set forth herein above, I have ordered the Hotel to comply with the RFI within ten (10) days from July 3, 2015.

### AWARD

The Hotel's request to strike the Union's "Request For Information" is denied. It is ordered to comply with that request within ten (10) days from July 3, 2015.

It is so ordered.

Dated: July 3, 2015
New York, New York

IRA DROGIN, under the penalties of perjury duly affirms that he is the arbitrator described herein, and that he executed the foregoing instrument.

_____
IMPARTIAL CHAIRPERSON

## ASSUMPTION AGREEMENT

Agreement made as of this 15th day of December, 2014, by and among CF 43 Hotel LLC, as owner ("Owner"), on its own behalf and on behalf of its affiliated or related entities and any current or future owner, manager or operator of the Carter Hotel, and their respective successors or assigns (collectively, "Hotel") and the New York Hotel and Motel Trades Council, AFL-CIO ("Union").

Whereas, Owner has agreed to purchase the Carter Hotel from the current owner ("Seller"); and

Whereas, a managing agent will manage the Carter Hotel on behalf of Owner; and

Whereas Seller is bound to, inter alia, Article 59 of that certain Industry-Wide Collective Bargaining Agreement between Hotel Association of New York City, Inc. and the Union, effective July 1, 2006 through June 30, 2012, as amended by that certain 2012 Memorandum of Understanding between Hotel Association of New York City, Inc. and the Union (July 1, 2012 through June 30, 2019) also known as the Industry-Wide Collective Bargaining Agreement ("IWA"); and

Whereas, Article 59 of the IWA requires successors, assigns and transferees ("successor") to be bound to the IWA;

Whereas, the Hotel agrees that it is a successor to the obligations under the IWA;

Now, therefore it is agreed:

1. The Hotel agrees that it shall retain all current bargaining unit employees, whose employment will continue uninterrupted and without loss of seniority, compensation, benefits or fringe benefits, and with no adverse effect on other terms and conditions of employment, subject to the IWA and applicable law.

2. The Hotel agrees that, effective as of the date of the closing, it has assumed, adopted and is bound by all of the terms, both economic and non-economic, of the IWA and those agreements and practices supplementing the IWA.

3. By virtue of the closing, the Hotel acknowledges that no new verification of currently valid I-9 forms will be necessary.

4. Effective immediately any and all disputes between the parties or regarding the interpretation or application of this Agreement shall be subject to the grievance arbitration provisions of the IWA, the entirety of which is incorporated herein by reference.

| FOR THE UNION | FOR THE HOTEL (on behalf of each owner, operator and manager) |
|---|---|
| By: _[signature]_<br>Name: Peter Ward<br>Title:<br>Authorized to Sign<br>Dated: 12-15-14 | By: _[signature]_<br>Name: JACK GRAFF<br>Title:<br>Authorized to Sign<br>Dated: 12-12-14 |

New York Hotel and Motel Trades Council, AFL-CIO · 707 Eighth Avenue, New York, NY 10036 · Telephone (212) 245-8100 · Legal Department Fax (212) 977-4450 · www.hotelworkers.org

April 9, 2015
Via Electronic and Regular Mail

Carter Hotel
Jon Cruz
250 W. 43rd Street
New York, NY 10036

      RE:    Carter Hotel – Request for Information

Dear Mr. Cruz,

      The Union is investigating its rights under the Industry Wide Collective Bargaining Agreement and requests that you provide the following information in an electronically importable form and format to Deshawn Belton at dbelton@nyhtc.org no later than seven (7) business days from the receipt of this request for information:

1. The identity of each individual or entity which has an ownership, management, or control interest in 250 West 43 Owner LLC, 250 West 43 Owner II LLC, and 250 West 43 Owner III LLC and/or the Carter Hotel (collectively, "Hotel") and a detailed description of the interest of such.

2. The identity of each of the officers and directors of 250 West 43 Owner LLC, 250 West 43 Owner II LLC, and 250 West 43 Owner III LLC, and the title of each.

3. Identify any individual or entity named in response to Requests 1 or 2 who also has an ownership, management, or control interest, if any, in the Cassa Hotel and Residences Times Square located at 515 9th Avenue, New York, NY 10018.

4. A list of all other hotels, motels, inns, or other transient or semi-transient residential properties or operations, in which any individual or entity identified in response to Requests 1 or 2 has an interest, and a detailed description of each such interest.

5. Any governing documents relating to 250 West 43 Owner LLC, 250 West 43 Owner II LLC, and 250 West 43 Owner III LLC, including, but not limited to articles of incorporation, corporate bylaws, partnership agreements, or the like.

6. Any agreements between the 250 West 43 Owner LLC, 250 West 43 Owner II LLC, and 250 West 43 Owner III LLC, and any management company, operator, concessionaire, contractor, or the like with regard to the Carter Hotel.

7. Any and all documents relating or referring to the ownership, management or control of the Hotel, including, but not limited to, management agreements, leases, deeds, franchise agreements, renovation or construction agreements, licenses, EEO reports, DOL reports, mortgages, liens, purchase and sale agreements, etc.

8. Any documents or information in your possession regarding the ownership, management or control of the Carter Hotel.

Thank you for your attention to this matter. Please do not hesitate to contact me if you have any questions.

Sincerely,

Richard Maroko
General Counsel

cc: Joseph Chetrit