# EXHIBIT G

#2016-16
Carter Hotel
April 5, 2016
Page 1 of 12

**OFFICE OF THE IMPARTIAL CHAIRPERSON**
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036
TEL: (212) 541-7212  FAX: (212) 541-9356

**EMPLOYER**:      CARTER HOTEL

       HTC Case #U15-130/ Emergency hearing requested by the New York Hotel & Motel Trades Council, AFL-CIO, against the Carter Hotel re. Improper Layoff in Violation of the IWA and the Law including violations of Articles 17, 45 and 61 of the IWA.

       3/25/15 - **AMENDED COMPLAINT**:  Emergency hearing requested by the New York Hotel & Motel Trades Council, AFL-CIO again the Carter Hotel re:  Improper Layoff in Violation of the IWA and the Law including violations of Articles 17, 45 and 61 of the IWA.

       HTC Case #U15-228/ Hearing requested by the New York Hotel and Motel Trades Council, AFL-CIO ("Union") against the Carter Hotel for failure and refusal to provide the Union with information since on or about April 20, 2015.

       Hearings held at the Office of the Impartial Chairperson on March 23, March 27, June 10, 2015 and January 21, 2016.

**A P P E A R A N C E S :**

| | |
|---|---|
| For the Employer: | Jon Cruz, General Manager |
| Counsel for the Employer:<br>By: | Clifton Budd & DeMaria, LLP<br>Arthur J. Robb, Esq. |
| Counsel for the Receiver: | Stroock & Stroock & Lavan, LLP<br>Beth A. Norton, Esq. |

For the New York Hotel & Motel Trades Council, AFL-CIO:
| | |
|---|---|
| Counsel:<br>By: | Pitta & Giblin LLP<br>Joseph F. Farelli, Esq. |

| | |
|---|---|
| For the Union: | Rolando Ruiz<br>Richard Maroko, Esq. |

*     *     *

**DECISION AND AWARD**

**OFFICE OF THE IMPARTIAL CHAIRPERSON**
**321 WEST 44TH STREET, SUITE 400**
**NEW YORK, NY 10036**
**TEL: (212) 541-7212  FAX: (212) 541-9356**

## BACKGROUND

On January 21, 2016 I held a combined hearing on cases numbered U15-130 and U15-228.  Hotel counsel presented no witnesses or testimony on the issues.  He was accompanied by the Hotel's Director of Human Resources, Lilly Sirkin, who was not called upon to testify.  The attorneys for the Union, and the Hotel argued their respective positions before me and the Union presented documentary evidence in support of its claims.  Thereafter, both sides presented Post Hearing Briefs, and the Union has presented a Reply Brief all of which have been duly considered.

## ISSUES

Three issues were dealt with at the January 21, 2016 hearing and a schedule for Briefs and Reply Briefs was agreed to.  I allowed both sides to submit with their Briefs any documentary evidence in support of their position.  I retained jurisdiction with regard to both cases.  The Three issues involved in these cases are:

1. Severance pay due former employees as a result of the closing of the Hotel for renovations.
2. The amount, if any, of money former Hotel employees are due resulting from any New York State WARN ACT liability incurred by the Hotel.
3. What punitive damages, if any, should be assessed against the Hotel as a result of its non-compliance with the Union's Request For Information?

At the January 21, 2016 Hearing, the Union withdrew its request for punitive damages resulting from non-payment of severance pay.  At that Hearing, I allowed the Hotel 10 days to object to any of the calculations submitted by the Union regarding severance pay and WARN ACT violations.  The Hotel has not submitted any objection to either of those calculations.  In its Brief dated March 2, 2016 it addresses as the only issue "The issue is whether the Employer's non-compliance [with the RFI] is deserving of punishment in an amount exceeding Three Million Dollars."  This issue will be addressed in this Award after I rule on the issues of severance pay and WARN ACT liability.

## DISCUSSION

## SEVERANCE PAY

Familiarity with my previous Awards in 2014 and 2015 with regard to this issue is presumed and those Awards need not be set forth in detail herein.  Suffice to say, that among other things, as a result of the layoffs of employees and the closing of the Hotel I found that the Hotel had violated the contractual provisions of the IWA, to which it was bound dealing with

OFFICE OF THE IMPARTIAL CHAIRPERSON
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036
TEL: (212) 541-7212   FAX: (212) 541-9356

severance pay.  At the January 21, 2016 Hearing the Union submitted a spreadsheet (Union Exhibit 2), a copy of which is attached to this this Award, calculating the amount of severance pay due affected employees.  The Union's counsel stated that, "The Hotel has not paid a dime as of today".  The Hotel counsel did not dispute the Union's claim, nor did its Director of Human Resources, who was present in the Hearing Room, claim otherwise.  I gave the Hotel 10 days after the date of that day's hearing to object to the calculations.  No objection was made by the Hotel.

Accordingly, I order and direct the Hotel to pay severance pay in the amount of $52,007.01 to the Union, on behalf of those employees shown on Union Exhibit 2.  I further order and direct the Hotel to pay the Union, on behalf of the various "Funds" the amount of $13,001.75, as required by the IWA, based on the amount of severance pay, making a total to be paid by the Hotel of $65,008.76 for unpaid severance pay.

## WARN ACT DAMAGES

The issue is not whether there is any New York State WARN ACT liability on the Hotel as I have previously determined that there is liability.  The issue is the amount of that liability.

At the January 21, 2016 Hearing the Union submitted a spreadsheet (Union Exhibit 3), showing the amount of WARN ACT damages it claimed was due to each affected employee.  A copy of Union Exhibit 3 is attached to this Award.  The Union also submitted (Union Exhibit 4), the New York State Regulations for calculations of the amount due for violation of the law.  The calculations were submitted by the Union to the Hotel on August 18, 2015.  The Union calculated a civil penalty of $500.00 per day for each violation, for the maximum of 90 days for each employee.  The Hotel has made no payment at all for violating the law.  Its position, asserted at the January 21, 2016 Hearing is that the Hotel is not required to pay the civil penalty that the law provides.

Other than its assertion at the Hearing, and its contention at that Hearing that the New York State Regulations are "vague" it has not addressed the WARN ACT civil penalty issue in its Brief[1].

I have studied Section 921-7.2 "Civil Penalty" of the New York State WARN ACT Regulations.  It clearly provides for a penalty of not more than $500.00 for each day of the employers violation.  The regulation provides for an exception from liabilities under certain factual circumstances, which are not claimed by the Hotel to be applicable in the facts of this

---

[1] The Hotel was given 10 days after the closing of the January 21, 2016 Hearing to object the Union's calculations in Union Exhibit 3. It has made no objections.

OFFICE OF THE IMPARTIAL CHAIRPERSON
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036
TEL: (212) 541-7212  FAX: (212) 541-9356

case.  Nor, has the Hotel argued that a lesser penalty than $500.00 per day would be appropriate.

I find no merit to the Hotel's position with regard to the WARN ACT civil penalty. Accordingly, I order and direct the Employer to pay the sum of $605,907.01 to the Union, on behalf of the employees listed in Union Exhibit 3 for its violation of the WARN ACT.  In addition, I order and direct the Employer to pay the sum of $197,899.51 to the Union on behalf of the "Funds" in accordance with the IWA.

<u>PUNITIVE DAMAGES</u>

Both the Hotel and the Union agree, that under the IWA the Impartial Chairperson may award punitive damages for non-compliance with an information request.  It is an undisputed fact that on April 9, 2015 the Union served a Request For Information upon the Hotel.  It is also undisputed that the Hotel did not fully comply with the RFI, or seek to resolve any objection it had to the RFI with the Union.  It simply ignored it.

Instead, the Hotel waited for the Union to bring the Hotel's non-compliance before the undersigned on June 11, 2015.  At that time the Hotel presented its objections to the RFI essentially arguing at the Hearing and in its Post Hearing Brief, that the information requested was not relevant to the Hotel.

I issued a Decision and Award on July 3, 2015 (#2015-38), in which I found that the information requested by the Union in the RFI was relevant to its Collective Bargaining Agreement rights and duties under Addendum IV of the Industry Wide Agreement, and that the Hotel was obligated under the IWA and the National Labor Relations Act to fully comply with the RFI within 10 days from July 3, 2015.  On July 6, 2015, the Hotel requested a 30-day extension of time to comply with the RFI.  I denied that application.

Thereafter, the Hotel did not move in court for a stay of my Award or to have the Award vacated.  The Hotel has admittedly not complied with my direction to furnish the information I directed it to produce[2].

The Union grieved the Hotel's non-compliance and a Hearing on this issue was scheduled for this Office for September 17, 2015.

---

[2] See page 1 of Hotel's Post Hearing Brief.

OFFICE OF THE IMPARTIAL CHAIRPERSON
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036
TEL: (212) 541-7212   FAX: (212) 541-9356

#2016-16
Carter Hotel
April 5, 2016
Page 5 of 12

The Hotel claims, in its Post Hearing Brief that, "the parties mutually agreed to stay further proceedings before the Chairman as to the Employer's compliance, because the parties were engaged in ongoing settlement negotiations over a period of months". The Union in its Post Hearing Brief claims "the Union never engaged in any settlement discussion with the Hotel or agreed to extend the time for the Hotel to comply with the RFI[3]".

No request was ever made to this Office for a stay of my order to comply with the RFI, and it remains in full force and effect.

The Hotel has attached to its Post Hearing Brief a string of emails to this Office from the representatives of the parties. The most supportive of the Hotel's position is a September 17, 2015 email from "Roy, Desiree" that "Mr. Ward said that all litigation regarding the Carter should be postponed for a few weeks". The "litigation" referred to appears to be the hearing scheduled for September 17, 2015 regarding non-compliance with the RFI.

This email does not amount to an agreed upon "stay". It is simply a request for an adjournment. Thereafter, the Hotel requested a "courtesy" adjournment due to the Jewish Holidays. This too was agreed to by the Union. Thereafter, on October 5, 2015 the Hotel again requested another adjournment of the Hearing. The Union agreed to an October 22, 2015 new Hearing date "as long as your client can commit to meeting next week for settlement discussions and to an arbitration hearing date of October 22, 2015".

There is no evidence of what transpired between October 22, 2015 and December 15, 2015 but it is clear that no evidence has been presented that the Union agreed to a stay of my order to produce the RFI information. The evidence shows only agreement to briefly postpone the hearing mainly for reasons requested by the Hotel.

On December 15, 2015 the Union's attorney emailed the Hotel's attorney "Please be advised that your client refuses to sign the agreement we sent to him, we are withdrawing the offer and proceeding to arbitration".

It's clear from the December 15, 2015 email that settlement discussion involved the Union's WARN ACT claim of $798,000.00, and was separate and apart from the severance pay claim. There is neither witness testimony, nor documentary evidence to support the Hotel's contention that a stay was agreed to because of negotiations, or ongoing negotiations.

---

[3] The Union submitted along with its Reply Brief a copy of a proposed settlement agreement with the Hotel. The proposal covered only Severance Pay and WARN ACT damages. There was no mention of the RFI. There was no mention of any stay of the RFI. The settlement proposal was subsequently withdrawn by the Union.

**OFFICE OF THE IMPARTIAL CHAIRPERSON**
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036
TEL: (212) 541-7212  FAX: (212) 541-9356

The final piece of documentation submitted by the Hotel in support of its position "that the parties mutually agreed to stay further proceedings before the Chairman as to the Employer's compliance, because the parties were engaged in ongoing settlement negotiations over a period", was a December 9, 2015 email from Mr. Chetrit, a principal of the Hotel.  It states that he had not received a response to his email dated November 24, 2015.  A copy of that letter is annexed hereto.  As can be seen from the letter there is no mention of any mutually agreed upon stay regarding the RFI.  In fact the only mention of an RFI in that letter is ambiguous reference to "RFI work to be performed".  There is no mention at all of the information Union requested regarding other matters.

On December 15, 2015, as noted here to before, the Union notified the Hotel's attorney that the Union withdrew its settlement offer and was proceeding to arbitration.

After reviewing the evidence I find no merit to the Hotel's contentions that the Union agreed to a mutual stay with regard to the RFI.  At best the evidence shows there was some settlement negotiation regarding severance pay and WARN ACT damages, and postponements of a hearing, but no evidence the RFI information requested by the Union, ordered to be produced by the undersigned from the Hotel was involved in, or was even part of the settlement negotiations.

I turn now to the issue as proposed in the Hotel's Post Hearing Brief – "whether the Employer's non-compliance is deserving of punishment" and if so, in what amount.

Addendum IV Section 3, of the IWA provides in pertinent part that,

"Notwithstanding any of the foregoing seemingly to the contrary, the Impartial Chairperson shall be empowered to issue such remedial orders as are consistent with applicable NLRB standards and necessary during and after the pendency of the Union's organizing drive to ensure the maintenance of the neutral environment and/or to penalize the Hotel or the Union for violating their obligations hereunder, including an order to bargain in accordance with applicable NLRB standards, and/or monetary or punitive damages to either party."

As correctly noted by the Hotel in its Post Hearing Brief, Addendum IV of the IWA does not mandate the imposition of punitive damages for non-compliance with an RFI, which compliance has been directed, in an arbitration Award.  The Hotel also correctly posits that Addendum IV simply grants discretion to the Chairman who "may" impose punitive damages. The Hotel then goes on to argue that "in the absence of agreed upon contractual standards to guide the Chairman's exercise of discretion the Employer urges the Chairman to follow well established principles under New York law for determining if punitive damages are appropriate".

OFFICE OF THE IMPARTIAL CHAIRPERSON
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036
TEL: (212) 541-7212   FAX: (212) 541-9356

#2016-16
Carter Hotel
April 5, 2016
Page 7 of 12

The New York cases relied upon by the Hotel do not support its argument that punitive damages are inappropriate, in the case before me.

The general proposition that punitive damages are disfavored and will only be awarded in exceptional cases arises from civil tort law.  It has no application in a case where the parties, each sophisticated in the matter involved have contractually agreed that punitive damages may be awarded by arbitration.

The Hotel urges that I follow the New York Standard for imposing punitive damages (in tort cases).  Under that proposed standard "a finding of a conscious and deliberate disregard of the interests of others that the conduct may be called willful or wanting is required."  If I were to apply that standard to the Hotel's conduct in this case I would find those elements present.  It is clear to me that the Hotel's conduct is willful and wanton.  It is deliberate, intentional and contumacious.  It is designed to prevent the Union from obtaining information necessary to provide its services to its members and to hinder organizing and recognition efforts by the Union, all to the current and future financial advantage of the Hotel.  It intentionally thwarts the intention of the parties expressed in Addendum IV of the IWA to provide a method for the peaceful resolution of disputes regarding representation rights and organizational drive with regard to a company which has or acquires an ownership, management or control interest in other hotels and concessionaires[4].  The Union's RFI sought this information.  Addendum IV is intended to promote industrial stability and to encourage the peaceful resolution of disputes in the hotel industry in New York City and its suburbs.

In the aforementioned Chelsea Grand Hotel case, I noted the intent of the parties regarding Addendum IV as follows:

"… parties to the IWA have vested the Office of the Impartial Chairperson with broad and sweeping powers to interpret and apply Addendum IV in order to effectuate its purpose.  Addendum IV was agreed by the parties to the IWA for the purpose of avoiding the disruptive labor unrest in the Hotel Industry, a service industry, and the disharmony that can often arise from the long, drawn out, and at times, ineffective procedures provided by the National Labor Relations Act with regard to Union

---

[4] The intent of the parties is clearly expressed in the third WHEREAS clause contained in the current collective bargaining agreement (IWA), which provides "WHEREAS, the parties hereto, desiring to cooperate to stabilize such labor relation by establishing general standards of wages, hours of service and other conditions of employment, and providing arbitral machinery whereby disputes and grievances between employers and employees may be adjusted without resort to strikes, lockouts or other interferences with the continued smooth operation of the hotel business, have agreed, pursuant to the provisions of a Memorandum of Understanding dated January 26, 2012 (hereinafter referred to as the "2012 MOU"), to enter into an agreement so as to be effective July 1, 2012 (except as otherwise stated herein), on the terms and conditions hereinafter stated;"

OFFICE OF THE IMPARTIAL CHAIRPERSON
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036
TEL: (212) 541-7212   FAX: (212) 541-9356

#2016-16
Carter Hotel
April 5, 2016
Page 8 of 12

<u>organizing campaign and NLRB representation procedures.</u> [emphasis added] IC 2008-04 at page 53 (April 14, 2008).

This is not the first case in this Office where punitive damages have been awarded against a Hotel.  My Award #2007-08, included punitive damages against the Chelsea Grand Hotel.  It was confirmed by United States District Court Judge Crotty in September, 2014 and affirmed by the United States Court of Appeals in November, 2015 (Case No. 14. Civ 3 796). My Award was followed by Chairperson Shriftman in <u>Wingate Inn, New York</u> where he imposed a penalty of $19,228 per day against that Hotel for failure to provide information.

The Hotel has exhibited defiance towards the principles of the IWA and the NLRA.  It has attempted to "game the system" by procrastination, delay and meritless arguments.  All of the foregoing is inconsistent with applicable NLRB standards that have been in existence for many decades[5].  The parties to this contract have given this Office a broad grant of powers to penalize hotel employers for the kind of conduct engaged in by this Employer, a power not granted by statute to the NLRB, which must seek court enforcement of its orders.  I reject the Hotel's suggestions of comparison with NLRB prospective awards for further or future violations of the NLRA because the NLRB does not have punitive jurisdiction for past or future conduct (<u>Consolidated Edison of N.Y v NLRB</u>, 305 U.S 197 (1938).

The Hotel argues in its Post Hearing Brief that "… the employer's non-compliance was based legitimately and in good faith, upon an effort to reach a global settlement of all outstanding grievances and matters between the Employer and the Union.  For its part the Employer refrained from furnishing information because the matter, in its view, was still the subject of ongoing negotiations".  Based on the evidence I find the Hotel's non-compliance was illegitimate and in bad faith.  While it had the right to seek a global settlement it had no legitimate right to refuse to comply with my Award from July 2015 to Jan 21, 2016, and ongoing.   I find that no "stay" had been agreed to by the Union.

I have considered all of the other arguments presented by the Hotel regarding the imposition of punitive damages and find them unconvincing, and unsupported by the evidence.

<u>AMOUNT OF PUNITIVE DAMAGES</u>

Punitive damages in the civil area are meant to deter others from engaging in similar conduct.  In civil cases, they also allow a jury to express the public outrage at the perpetrator's conduct.  The award of large sums is not unusual.  In the <u>Exxon Valley</u> oil spill case the jury

---

[5] Because the NLRA is remedial statute, it does not grant the NLRB discretion to award punitive damages even for the most flagrant violations of the NLRA.

**OFFICE OF THE IMPARTIAL CHAIRPERSON**
**321 WEST 44TH STREET, SUITE 400**
**NEW YORK, NY 10036**
**TEL: (212) 541-7212   FAX: (212) 541-9356**

awarded punitive damages in the amount of 5 Billion Dollars.  That was reduced by the U.S Supreme Court only because maritime law was involved.  Recently, a female television sports reporter was awarded 55 Million Dollars by a jury against an individual perpetrator and a hotel where she was spied upon in the nude.  Multimillion-Dollar punitive damage awards are not unusual in civil cases where compensation and punitive damages are sought[6].

In non-litigation situations, parties can agree that if the other party breaks their agreement, an agreed upon sum must be paid by the violator, as liquidated damages.  In corporate merger and buy out situations large amount of money are agreed to be paid as "break up fees", in the event one party declines to proceed and backs out of the deal.  Recently a "break up fee" was involved in the Ace/Chubb merger in the amount of $930 Million Dollars and the failed merger between Pfizer and Allergan will cost Pfizer an agreed "break up fee" of 4.5 Billions Dollars.  In the stock market, under the rules of the National Futures Association a violator of the NFA's rules is subject to a monetary fine not to exceed $250,000 per violation.

In situations where civil coercive fines have been levied by a court, multimillion-dollar fines are not unusual.  In 1995, in United Mine Workers v Bagwell, the trial court ordered the Union to pay $52 Million Dollars in fines for violation of a court order[7].

In the case before me, the Union has correctly pointed out that the United States Supreme Court has recognized that parties' arbitration agreements permit an arbitrator to award punitive damages, not withstanding an individual states prohibition to the law[8] (see Mastrobuono v. Shearson Lehman Hutton Inc.) (Citation omitted).

As previously noted a daily penalty of $35,000 was awarded by the undersigned in the "Chelsea Grand" case for a failure to provide the Impartial Chairperson with information. In the "Wingate Inn" case, Chairperson Shirftman imposed a penalty on the Hotel in the amount of $19,228 per day for refusal by the Hotel to provide him with information.  I see no difference between penalizing this Hotel for failure to provide information to the Union, rather than to the Impartial Chairperson.  I choose to follow the precedent of the punitive damages award made by this Office, which has been upheld by the U.S District Court and the U.S court of Appeals.
The Union argues that punitive damages should be based on the "Chelsea Grand" precedent to wit, the average room rate of $89.00 per day multiplied by 200 rooms, which the

---

[6] Most recently wrestler "Hulk Hogan" was awarded 25 Million Dollars punitive damages in addition to substantial compensatory damages.
[7] The United States Supreme Court subsequently ruled that the Union's violations were serious enough to entitle the Union to the benefit of a criminal jury trial.
[8] There is no such prohibition under New York State law.

OFFICE OF THE IMPARTIAL CHAIRPERSON
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036
TEL: (212) 541-7212  FAX: (212) 541-9356

Hotel had available to rent, prior to its closing.   This would amount to $17,800 per day, for each day after July 13, 2015 that the Hotel has failed and continues to fail to fully comply with the RFI.  The Hotel argues that its non-compliance was not sufficiently wanton or egregious to warrant the "extreme" penalty sought.  I have rejected the Hotel's argument as meritless based on the evidence.

The Hotel next argues that "a retroactive penalty of the magnitude sought cannot withstand scrutiny under relevant legal principles.  I disagree.  In the "Chelsea Grand" case, daily punitive damages, of twice the amount sought here by the Union have been upheld only last year by the U.S Court of Appeals for the Second Circuit[9].

The Hotel's argument that punitive damages in an RFI case of over 3 Million Dollars is "out of bounds" where the Union did not seek, and was not awarded compensatory damages fails, as it fails to recognize the nature and purpose of punitive damage.  The Hotel has failed to submit a single case, or authority to support this argument.  Punitive damages are not compensatory.  They are designed to punish offenders, secure compliance, and deter the offender and others from following the same path.  I disagree with the Hotel that "the Union's request is grossly out of line with judicial penalties for similar infraction."  I repeat, that the Hotel conduct is contumacious of my Award ordering it to supply the information.

The economic harm suffered by the Union as a result of the Hotel's misconduct and defiance is incalculable and the Union has not requested compensatory damage.  The Hotel however suggest an award based on theoretical harm suffered by the Union.  This would be Union dues of $10.99 per paycheck for 34 bargaining unit employees which would amount to a daily loss of $82.52 per day on a total of $2,170,276.00 through April 5, 2016.  Such penalty, in my opinion, would have little or no deterrent effect on this Hotel, where the estimated renovation cost alone, not counting the purchase price of the Hotel, is over $150 Million Dollars[10].  Indeed, the Hotel is fortunate that the average daily room rate asked by the Union is only $89.00 per day, which is a room a rate at least half of the average room rate for hotels in the Times Square area.  I will use the $89.00 per day room rate, which amounts to punitive damages of $4,752,600.00, from July 13, 2015 through April 5, 2016.

Finally, the Hotel argues that "the appropriate penalty for non-compliance with an order to furnish information must be prospective in nature with an opportunity to cure".  This

---

[9] As noted by the Union in its Reply Brief, the Hotel there complied and furnished the information 14 days after the issuance of the Award and punitive damages were obviously effective.

[10] While the purchase price of this "Times Square" Hotel is unknown, recent hotel purchases in Manhattan have involved large sums.  In 2015 the Waldorf Astoria was purchased for 1 Billion, 950 Million dollars.  Currently, a bid of 14 Billion cash, has been made for Starwood Hotels and Resorts, Worldwide.

**OFFICE OF THE IMPARTIAL CHAIRPERSON**
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036
TEL: (212) 541-7212  FAX: (212) 541-9356

argument, again not supported by citation of any authority can only be described as disingenuous by the Hotel, which has refused to comply since July 13, 2015.  It is specious. The Hotel can "cure" its defiance at any time in the future, by complying with the RFI.

## AWARD

The Hotel is ordered and directed to pay the sum of $17,800 per day for punitive damages from July 13, 2015 through April 5, 2016 amounting to $4,752,600.00 and $17,800 per day thereafter that it fails to comply with the RFI.  The Hotel is ordered and directed to pay the sums hereinbefore specified for severance pay and WARN ACT violations.  I retain jurisdiction of these cases to resolve any future disputes with regard to the sums I have directed to the Hotel to pay.


It is so ordered.

OFFICE OF THE IMPARTIAL CHAIRPERSON
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036
TEL: (212) 541-7212   FAX: (212) 541-9356

#2016-16
Carter Hotel
April 5, 2016
Page 12 of 12

Dated:       April 5, 2016
             New York, New York

        IRA DROGIN, under the penalties of perjury duly affirms that he is the
        arbitrator described herein, and that he executed the foregoing instrument.


                                    _____
                                    IMPARTIAL CHAIRPERSON

## Carter Hotel Severance 2015

| Last Name | First Name | DOH | Classification | Hotel Rate | Union Rate | Severance Date | Severance YOS | Employee Severance | Funds |
|---|---|---|---|---|---|---|---|---|---|
| Cavalcanti | Sergio | 6/9/2014 | Doorperson | | 16.209 | 3/24/2015 | 0.75 | $ - | $ - |
| Sepulveda | Ricardo | 8/30/2013 | Doorperson | | 16.209 | 1/4/2015 | 1.25 | $ 1,296.72 | $ 324.18 |
| Bravo-Saldana | Luis | 2/28/2009 | Doorperson | | 16.7093 | 3/24/2015 | 6.00 | $ 6,416.37 | $ 1,604.09 |
| Castanon | Christian** | 10/17/2014 | Doorperson | | 16.209 | 3/24/2015 | 0.50 | $ - | $ - |
| Yap | William | 9/10/2011 | Front Office* | | 28.8886 | 1/4/2015 | 3.25 | $ 2,628.86 | $ 657.22 |
| Nguyen | Cham | 1/15/1995 | Housekeeping Supervisor | | 29.8703 | 3/24/2015 | 20.25 | $ 16,936.46 | $ 4,234.12 |
| Liranzo | Raffy | 7/12/2013 | Maintenance | | 22.629 | 1/4/2015 | 1.50 | $ 950.42 | $ 237.60 |
| Puerta | Paula** | 7/11/2013 | Maintenance Helper/Houseperson | | 21.953 | 1/4/2015 | 1.50 | $ 922.03 | $ 230.51 |
| Paulino | Luis** | 7/24/2013 | Maintenance Helper/Houseperson | | 21.953 | 1/4/2015 | 1.50 | $ 922.03 | $ 230.51 |
| Birot | Jason | 7/5/2013 | Painter | | 30.172 | 1/4/2015 | 1.50 | $ 1,267.22 | $ 316.81 |
| Tran | Trang | 11/4/2013 | Reservation Clerk | | 24.1388 | 3/24/2015 | 1.50 | $ 1,013.83 | $ 253.46 |
| Tran | Madalena | 11/3/2008 | Reservation Clerk | | 28.439 | 1/4/2015 | 6.25 | $ 4,976.83 | $ 1,244.21 |
| Tapia | Rosaida | 6/9/2014 | Room Attendant | | 21.3817 | 1/4/2015 | 0.50 | $ - | $ - |
| Cruz | Illuminada | 3/17/2014 | Room Attendant | | 28.5080 | 1/4/2015 | 0.75 | $ - | $ - |
| Munziano | Rhonda | 3/14/2014 | Room Attendant | | 28.5080 | 1/4/2015 | 0.75 | $ - | $ - |
| Cespedes | Celestina | 3/12/2014 | Room Attendant | | 21.3817 | 1/4/2015 | 0.75 | $ - | $ - |
| Tatis | Yulissa | 2/19/2014 | Room Attendant | | 21.3817 | 1/4/2015 | 0.75 | $ - | $ - |
| Truong | Tiep | 2/19/2014 | Room Attendant | | 21.3817 | 1/4/2015 | 0.75 | $ - | $ - |
| Gonzalez | Jessica | 9/6/2013 | Room Attendant | | 21.3817 | 1/4/2015 | 1.25 | $ 748.36 | $ 187.09 |
| Chen Yuen | Cai Qiong | 8/26/2013 | Room Attendant | | 21.3817 | 1/4/2015 | 1.25 | $ 748.36 | $ 187.09 |
| Quilligana | Emma | 7/1/2013 | Room Attendant | | 21.3817 | 1/4/2015 | 1.50 | $ 898.03 | $ 224.51 |
| Medina | Angela | 6/19/2013 | Room Attendant | | 21.3817 | 1/4/2015 | 1.50 | $ 898.03 | $ 224.51 |
| Henderson | April | 6/14/2013 | Room Attendant | | 21.3817 | 1/4/2015 | 1.50 | $ 898.03 | $ 224.51 |
| Martinez | Elizabeth | 6/12/2013 | Room Attendant | | 21.3817 | 1/4/2015 | 1.50 | $ 898.03 | $ 224.51 |
| Rhodes | Tyrice | 6/10/2013 | Room Attendant | | 21.3817 | 1/4/2015 | 1.50 | $ 898.03 | $ 224.51 |
| Calle | Luisa | 6/7/2013 | Room Attendant | | 21.3817 | 1/4/2015 | 1.50 | $ 898.03 | $ 224.51 |
| Nguyen | Khi | 4/13/2013 | Room Attendant | | 21.3817 | 1/4/2015 | 1.75 | $ 1,047.70 | $ 261.93 |
| Arevalo | Maria | 3/31/2013 | Room Attendant | | 21.3817 | 1/4/2015 | 1.75 | $ 1,047.70 | $ 261.93 |
| Chen | Jin | 3/20/2013 | Room Attendant | | 21.3817 | 1/4/2015 | 1.75 | $ 1,047.70 | $ 261.93 |
| Cao | Tuyen | 2/6/2013 | Room Attendant | | 21.3817 | 1/4/2015 | 2.00 | $ 1,197.37 | $ 299.34 |
| Guerrero | Aaron | 8/8/2013 | Telephone Operator | | 21.43395 | 12/19/2014 | 1.25 | $ 750.19 | $ 187.55 |
| Carillo | Nestor | 7/2/2013 | Telephone Operator | | 21.43395 | 1/4/2015 | 1.50 | $ 900.23 | $ 225.06 |
| Zenon | Diana | 6/17/2013 | Telephone Operator | | 21.43395 | 1/4/2015 | 1.50 | $ 900.23 | $ 225.06 |
| Shim-Johnson | Lavon | 6/10/2013 | Telephone Operator | | 21.43395 | 1/4/2015 | 1.50 | $ 900.23 | $ 225.06 |
| | | | | | | | | $ 52,007.01 | $ 13,001.75 |

*hotel used 2013 FO Cashier Rate
**used hire date from database

| $ | 65,008.76 |
|---|---|
| | Total Severance |

Exhibit 3

# Carter Hotel WARN Act Claim

| Last Name | First Name | DOH | Classification | Hourly Rate | WARN Days | Total Due | Health Fund | Pension Fund | Pre-Paid L.F. | Training Fund | Total Funds |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Villanueva | Enrico | 6/27/13 | Accounting Clerk | 21.636 | 60.00 | $ 9,087.12 | $ 2,167.69 | $ 876.30 | $ 65.12 | $ 5.00 | $ 3,095.12 |
| Cavalcanti | Sergio | 6/9/14 | Doorperson *** | 16.209 | 60.00 | $ 15,560.64 | $ 1,938.07 | $ 783.48 | $ 41.24 | $ 5.00 | $ 2,767.79 |
| Sepulveda | Ricardo | 8/30/13 | Doorperson *** | 16.209 | 60.00 | $ 15,560.64 | $ 1,100.19 | $ 538.38 | $ 38.38 | $ 5.00 | $ 3,916.36 |
| Bravo-Saldana | Luis | 2/28/09 | Doorperson *** | 16.7093 | 60.00 | $ 16,040.93 | $ 1,902.34 | $ 769.03 | $ 40.48 | $ 5.00 | $ 2,716.84 |
| Castanon | Christian** | 10/17/14 | Doorperson *** | 16.209 | 60.00 | $ 15,560.64 | $ 1,858.49 | $ 751.30 | $ 39.54 | $ 5.00 | $ 2,554.33 |
| Farofalanee | Gabriel | 4/10/13 | Front Office* | 24.55551 | 60.00 | $ 10,313.23 | $ 2,717.35 | $ 1,098.50 | $ 57.82 | $ 5.00 | $ 3,878.67 |
| Yap | William | 9/10/11 | Front Office* | 28.8886 | 60.00 | $ 12,133.21 | $ 2,490.19 | $ 1,006.67 | $ 52.98 | $ 5.00 | $ 3,554.85 |
| Bernales | Randall | 6/21/11 | Front Office* | 28.8886 | 60.00 | $ 12,133.21 | $ 2,423.09 | $ 979.55 | $ 51.56 | $ 5.00 | $ 3,459.19 |
| Velasquez | Jolas | 9/1/10 | Front Office* | 28.8886 | 60.00 | $ 12,133.21 | $ 2,809.71 | $ 1,135.84 | $ 59.78 | $ 5.00 | $ 4,010.33 |
| Tran | Victoria | 4/22/96 | Front Office* | 28.8886 | 60.00 | $ 12,133.21 | $ 2,972.62 | $ 1,201.70 | $ 63.25 | $ 5.00 | $ 4,242.56 |
| Gattou | Dress | 7/19/08 | Front Office Coordinator | 29.7563 | 60.00 | $ 12,497.65 | $ 3,331.49 | $ 1,346.72 | $ 70.88 | $ 5.00 | $ 4,754.15 |
| Vasquez | Carmen | 12/23/13 | Housekeeping Supervisor | 29.8700 | 60.00 | $ 12,545.40 | $ 2,948.17 | $ 1,191.81 | $ 62.73 | $ 5.00 | $ 4,207.71 |
| Liranzo | Raffy | 7/12/13 | Maintenance | 22.629 | 60.00 | $ 9,504.18 | $ 2,626.20 | $ 1,061.65 | $ 55.88 | $ 5.00 | $ 3,748.73 |
| Tran | Dai | 3/9/09 | Maintenance | 30.172 | 60.00 | $ 12,672.24 | $ 2,977.78 | $ 1,203.78 | $ 63.36 | $ 5.00 | $ 4,249.92 |
| Lam | Dan | 10/17/07 | Maintenance | 30.172 | 60.00 | $ 12,672.24 | $ 2,988.18 | $ 1,207.99 | $ 63.58 | $ 5.00 | $ 4,264.75 |
| Tran | Thanh Nam | 8/29/07 | Maintenance | 30.795 | 60.00 | $ 12,933.90 | $ 3,160.37 | $ 1,277.60 | $ 67.24 | $ 5.00 | $ 4,510.21 |
| Huynh | Thanh | 10/13/94 | Maintenance | 30.172 | 60.00 | $ 12,672.24 | $ 2,977.78 | $ 1,203.78 | $ 63.36 | $ 5.00 | $ 4,356.93 |
| Tran | Bac | 5/8/87 | Maintenance | 30.172 | 60.00 | $ 12,672.24 | $ 2,661.79 | $ 1,051.79 | $ 55.36 | $ 5.00 | $ 4,326.71 |
| Paulino | Luis** | 7/19/13 | Maintenance Helper/Houseperson | 22.631 | 60.00 | $ 9,220.26 | $ 2,233.58 | $ 902.94 | $ 47.52 | $ 5.00 | $ 3,237.08 |
| Acevedo | Angel** | 6/3/13 | Maintenance Helper/Houseperson | 21.953 | 60.00 | $ 9,505.02 | $ 2,233.58 | $ 902.94 | $ 47.52 | $ 5.00 | $ 3,189.04 |
| Birot | Jason | 11/4/13 | Painter | 30.172 | 60.00 | $ 12,672.24 | $ 3,052.85 | $ 1,234.13 | $ 64.95 | $ 5.00 | $ 4,356.93 |
| Tran | Trang | 11/4/13 | Reservation Clerk | 21.953 | 60.00 | $ 9,505.02 | $ 2,233.58 | $ 902.94 | $ 47.52 | $ 5.00 | $ 3,189.04 |
| Tran | Madalena | 11/3/08 | Reservation Clerk | 22.631 | 60.00 | $ 9,505.02 | $ 2,233.58 | $ 902.94 | $ 47.52 | $ 5.00 | $ 3,189.04 |
| Lumangas | Erwin | 4/30/08 | Reservation Clerk | 28.439 | 60.00 | $ 10,138.28 | $ 2,342.24 | $ 947.52 | $ 48.75 | $ 5.00 | $ 3,343.52 |
| Tapia | Rosalda | 6/9/14 | Room Attendant | 32.185 | 60.00 | $ 11,944.38 | $ 3,131.50 | $ 1,177.68 | $ 61.99 | $ 5.00 | $ 4,157.86 |
| Cruz | Illuminada | 3/17/14 | Room Attendant | 21.3817 | 60.00 | $ 8,980.30 | $ 902.94 | $ 5.00 | | | $ 3,189.04 |
| Munziano | Rhonda | 3/14/14 | Room Attendant | 28.5080 | 60.00 | $ 11,973.36 | $ 2,128.40 | $ 860.72 | $ 45.37 | $ 5.00 | $ 4,025.24 |
| Cespedes | Celestina | 3/12/14 | Room Attendant | 21.3817 | 60.00 | $ 8,980.30 | $ 860.42 | $ 45.29 | $ 5.00 | | $ 4,073.00 |
| Tatis | Yulissa | 2/19/14 | Room Attendant | 21.3817 | 60.00 | $ 8,980.30 | $ 861.67 | $ 861.38 | $ 45.86 | $ 5.00 | $ 3,335.65 |
| Truong | Tiep | 2/19/14 | Room Attendant | 21.3817 | 60.00 | $ 8,980.30 | $ 911.77 | $ 871.38 | $ 48.57 | $ 5.00 | $ 3,073.91 |
| Gonzalez | Jessica | 9/6/13 | Room Attendant | 21.3817 | 60.00 | $ 8,980.30 | $ 902.94 | $ 922.80 | $ 48.48 | $ 5.00 | $ 3,259.07 |
| Chen Yuen | Cai Qiong | 8/26/13 | Room Attendant | 21.3817 | 60.00 | $ 8,980.30 | $ 902.94 | $ 922.80 | $ 48.52 | $ 5.00 | $ 3,077.17 |
| Quilligana | Emma | 6/19/13 | Room Attendant | 21.3817 | 60.00 | $ 8,980.30 | $ 916.55 | $ 48.21 | $ 5.00 | | $ 3,039.10 |
| Medina | Angela | 6/14/13 | Room Attendant | 21.3817 | 60.00 | $ 8,980.30 | $ 923.42 | $ 870.29 | $ 45.80 | $ 5.00 | $ 3,067.44 |
| Henderson | April | 6/14/13 | Room Attendant | 28.5089 | 60.00 | $ 11,973.74 | $ 2,156.43 | $ 871.75 | $ 45.88 | $ 5.00 | $ 4,219.49 |
| Martinez | Elizabeth | 6/10/13 | Room Attendant | 21.3817 | 60.00 | $ 8,980.30 | $ 871.75 | $ 46.00 | $ 5.00 | | $ 3,044.68 |
| Rhodes | Tyrice | 6/12/13 | Room Attendant | 28.5089 | 60.00 | $ 11,973.74 | $ 2,273.06 | $ 58.09 | $ 5.00 | | $ 3,897.21 |
| Calle | Kisi | 4/12/13 | Room Attendant | 21.3817 | 60.00 | $ 8,980.30 | $ 792.42 | $ 55.88 | $ 5.00 | | $ 3,086.81 |
| Nguyen | Maria | 3/31/13 | Room Attendant | 21.3817 | 60.00 | $ 8,980.30 | $ 2,273.12 | $ 873.95 | $ 46.00 | $ 5.00 | $ 3,985.68 |
| Arevalo | Maria | 3/20/13 | Room Attendant | 21.3817 | 60.00 | $ 8,980.30 | $ 864.80 | $ 45.52 | $ 5.00 | | $ 3,054.57 |
| Jun | Jin | 2/6/13 | Room Attendant | 21.3817 | 60.00 | $ 8,980.30 | $ 876.39 | $ 48.36 | $ 5.00 | | $ 3,095.42 |
| Chen | Tuyen | 2/6/13 | Room Attendant | 21.3817 | 60.00 | $ 8,980.30 | $ 2,167.90 | $ 876.39 | $ 45.52 | $ 5.00 | $ 3,968.52 |
| Pena-Rodriguez | Teys | 7/12/12 | Room Attendant | 28.1710 | 60.00 | $ 11,831.82 | $ 2,780.38 | $ 1,123.98 | $ 59.16 | $ 5.00 | $ 3,944.46 |
| Ortiz | Lourdes | 11/12/99 | Room Attendant | 28.5089 | 60.00 | $ 11,973.74 | $ 2,812.95 | $ 1,137.15 | $ 59.85 | $ 5.00 | $ 4,014.95 |
| Mecaj | Burburoje | 6/27/98 | Room Attendant | 28.5089 | 60.00 | $ 11,973.74 | $ 2,812.95 | $ 1,137.15 | $ 59.85 | $ 5.00 | $ 4,014.95 |
| Rodrigues | Yionka | 11/12/99 | Room Attendant | 28.5089 | 60.00 | $ 11,973.74 | $ 2,812.95 | $ 1,137.15 | $ 59.85 | $ 5.00 | $ 4,014.95 |
| Espinal | Maria Antonia | 1/26/98 | Room Attendant | 28.5089 | 60.00 | $ 11,973.74 | $ 2,812.95 | $ 1,137.15 | $ 59.85 | $ 5.00 | $ 4,014.95 |
| Guerrero | Aaron | 8/8/13 | Telephone Operator | 21.43395 | 60.00 | $ 12,672.24 | $ 2,161.87 | $ 873.95 | $ 46.00 | $ 5.00 | $ 3,200.93 |
| Carillo | Nestor | 7/2/13 | Telephone Operator | 21.43395 | 60.00 | $ 9,002.26 | $ 850.73 | $ 44.78 | $ 5.00 | | $ 3,681.79 |
| Zenon | Diana | 6/17/13 | Telephone Operator | 21.43395 | 60.00 | $ 9,002.26 | $ 2,402.95 | $ 854.88 | $ 45.13 | $ 5.00 | $ 3,637.49 |
| Shim-Johnson | Lavon | 6/10/13 | Telephone Operator | 21.43395 | 60.00 | $ 9,002.26 | $ 2,255.15 | $ 911.66 | $ 47.98 | $ 5.00 | $ 3,219.79 |

**GRAND TOTAL $803,806.52**

**TOTAL** $ 605,907.01    $138,632.12    $56,042.77    $2,949.62    $275.00    $197,899.51

*Union #4*

(c)    The Commissioner shall not have the authority to enjoin a plant closing, relocation, mass layoff, or covered reduction in work hours.

## §921-7.2    Civil penalty.

(a)    An employer who fails to give notice as required by the Act and this Part is subject to a civil penalty of not more than five hundred dollars ($500) for each day of the employer's violation, which shall be imposed in the aggregate and not individually for each affected employee or other party that failed to receive notice.  The employer is not subject to a civil penalty under the Act or this Part only if the employer pays each affected employee the total amount for which the employer is liable under the Act and this Part, including back pay and all fringe benefits, within three (3) weeks from the employee's date of layoff, as defined in §921-1.1(c), due to a plant closing, mass layoff, relocation, or covered reduction of work hours.  Paying employees their regular wages and benefits over the period of the violation (that exceeds three weeks) does not exempt the employer from the civil penalty.  Employers making such payments shall include with the final payment of wages or through some other form of notice provided at the time such payment is made, the following notice:

"You are hereby notified that, as a result of your employment loss, you may be eligible to receive job retraining, re-employment services, or other assistance with obtaining new employment from the New York State Department of Labor or its workforce partners.  You may also be eligible for unemployment insurance benefits after your last day of employment.  You can access reemployment information and apply for unemployment insurance benefits on the Department's website, and you may also use the contact information provided on the website or visit one of the Department's local offices to obtain further information and assistance."

(b)    The total amount of penalties for which an employer may be liable under the Act and this Part shall not exceed the maximum amount of penalties for which the employer may be liable under the federal law for the same violation.

(c)    Any penalty amount paid by the employer under federal law that the employer demonstrates to the Commissioner's satisfaction has been paid prior to the issuance of the Commissioner's determination, shall be considered a payment made for the purposes of this rule.

## §921-7.3    Violation; liability.

(a)    An employer who fails to give notice to an employee entitled to receive notice under this Part, is liable to each such employee, including part-time employees for:

(1)    Back pay at the average regular rate of compensation received by the employee during the three years prior to the date of termination, or the employee's final rate of compensation, whichever is higher.  The "average regular rate of compensation" is calculated by dividing the total regular and overtime wages earned by the employee during the three years prior to the date of termination by the number of days worked over the same three year period.  The "final rate of compensation" is calculated by dividing the amount received by the employee in his or her last paycheck prior to termination divided by the number of days worked.  For calculations involving salary or commission employees, the number of days worked is the number of days the employee was in active employment status.

(2)    In the case of an employee who became an employee of his/her current employer through a merger or consolidation of his/her former employer with/into his/her current employer, such employee's history of wage and benefit payments from his/her prior employer shall be treated as if such wages and benefits were earned with his/her current employer for purposes of making any calculations that are required under this Part, including the payment of back wages and benefits due.

(3)    The value of the cost of any benefits to which the employee would have been entitled had his or her employment not been lost, including the cost of any medical expenses incurred by the employee that would have been covered under an employee benefit plan.  Benefits that the Commissioner will consider shall include, but not be limited to: health benefits, private disability coverage, life insurance, employer paid retirement contributions, and vacation leave.

(b)    Back pay and other liability under the Act is calculated for the period of the employer's violation, up to a maximum of 60 days, or one-half the number of days that the employee was employed by the employer, whichever period is smaller.

(c)    The amount of an employer's liability, under this section, shall be reduced by the following:

(1)    Any wages, except vacation moneys accrued before the period of the employer's violation, paid by the employer to the employee during the period of the employer's violation. Wages are obtained using the same calculation in paragraph (a)(1) of this section.

(2)    Any voluntary and unconditional payments made by the employer to the employee that were not required to satisfy any legal obligations and that the employer can demonstrate were made prior to the issuance of the Commissioner's final determination. Such payments shall be made by check or through a previously agreed upon direct deposit arrangement.  Severance packages or other payments required pursuant to employee contracts, collective bargaining agreements, through other legal obligations, or under law shall not be credited against liability under this section.  Promises to make future payments shall not be credited against liability under this section.

(3)    Any payments by the employer to a third party trustee, such as premiums for health benefits or payments to a defined contribution plan, on behalf of and attributable to the employee for the period of the violation.

(4)    Any liability paid by the employer under any applicable federal law governing notification of mass layoffs, plant closings, relocations, or covered reductions in work hours.

(5)    In an administrative proceeding by the Commissioner, any liability paid by the employer prior to the Commissioner's determination as the result of a private action brought under this Act.

(6)    In a private action brought under this Act, any liability paid by the employer in an administrative proceeding by the Commissioner prior to the adjudication of such private action.

(d)    Any liability incurred by an employer under paragraph (a) of this section with respect to a defined benefit pension plan may be reduced by crediting the employee with service for all purposes under such a plan for the period of the violation.

(e)  The period of the violation, for which the employer is liable to each employee, begins on the date of the employee's employment loss and continues up to 90 days after the date the employee received notice.  Where the employer failed to provide notice, the period of the violation is 90 days.  Where the employer claims exemption from the notice requirements under one of the exceptions provided for in the Act, the Commissioner will consider all information obtained during the investigation and determine when it would have been practicable for the employer to provide notice, if at all.

(f)  A WARN Act violation may be shared with other public entities making fitness, responsible contractor, or due diligence inquiries.

### §921-7.4  Administrative review.

(a)       Should the Commissioner identify any violations of the WARN Act or this Part, he or she shall notify the employer of such violations and the amounts due for wages, benefits, and/or penalties associated with such violations.  Such violations may, in the Commissioner's discretion, be set forth in the first instance in either a Notice of Violation or a Notice of Violation accompanied by a Notice of Hearing.  In no event shall the Commissioner issue an order or determination addressing such violations without having first held a hearing in the matter, except in those cases in which the employer has waived its right to such hearing pursuant to a settlement upon terms acceptable to the Commissioner

(b)   Hearings. Administrative hearings for a violation of the State WARN Act shall be conducted by an employee of the Department of Labor designated by the Commissioner to be the hearing officer, who shall not be bound by statutory rules of evidence or by technical or formal rules of procedure. The procedure found in 12 NYCRR Part 701, Procedural Rules for Hearings, shall be the sole and exclusive procedure for the conduct of such hearings, notwithstanding any other provision of law.  The hearing officer, as soon after the conclusion of the hearing as possible, on the basis of the record made in the proceeding, shall submit his or her report and recommendation to the Commissioner, who shall promptly thereafter issue his or her order and determination.

(c)   Determination and Order of the Commissioner.  If the Commissioner shall determine that an employer has violated any of the requirements of the Act or this Part, the Commissioner shall issue an order which shall include any penalties assessed by the Commissioner and file a notice of entry thereof in the office of the Commissioner.

### §921-7.5  Appeals.

Within thirty (30) days of the filing of a notice of entry of the order in the office of the Commissioner, any party aggrieved thereby may commence a proceeding for the review thereof pursuant to article 78 of the Civil Practice Law and Rules.  Such proceeding shall be commenced directly in the Appellate Division of the Supreme Court.  If such order is not reviewed, or is so reviewed and the final judicial decision is in favor of the Commissioner, the Commissioner may file with the county clerk of the county where the employer resides or has a place of business the order of the Commissioner containing the amount found to be due.  The filing of such orders shall have the full force and effect of a judgment duly docketed in the office of such clerk.  The

order may be enforced by and in the name of the Commissioner in the same manner, and with like effect, as the prescribed by the CPLR for the enforcement of a money judgment.

**§921-7.6    Distribution of back pay.**

The Commissioner shall distribute to all employees entitled to notice under the Act and this Part any back pay and the value of any benefits recovered from an employer who did not provide such notice.

**§921-7.7    Admissibility of decision or order.**

No decision or order issued pursuant to this Act shall be admissible or used in evidence in any subsequent court proceeding except in an action by the Commissioner or the employer to implement, enforce or challenge a determination made by the Commissioner pursuant to this Act.

## SUBPART 921-8
## CONFIDENTIALITY OF INFORMATION OBTAINED BY THE COMMISSIONER OF LABOR

**§921-8.1    Confidentiality of information obtained by the Commissioner of Labor.**

(a)    Except as otherwise provided in this subpart information obtained by the Commissioner through the administration of the Act from an employer and which is not otherwise obtainable by the Commissioner under the Labor Law or rules or regulations promulgated thereunder shall

(1)    be confidential; and

(2)    not be published or open to public inspection.

(b)    Prior to public disclosure of any information otherwise deemed confidential pursuant to this subpart in connection with any court action or proceeding, the employer shall be given a reasonable opportunity to make application to the court to protect the information's confidentiality.

(c)    Names and addresses of employees provided to the Commissioner pursuant to Labor Law section 860-b and 12 NYCRR 921-2 shall remain confidential.

(d)    Notwithstanding the provisions set forth in paragraphs (a) and (c) of this subpart, information obtained by the Commissioner from the WARN notice required by the Act or this Part shall not be considered confidential.

## SUBPART 921-9
## PRESERVATION OF OTHER RIGHTS AND REMEDIES

**§921-9.1    Other Rights.**

The provisions of this Part, including but not limited to notice requirements, shall not be used to alter, abridge, or affect the employment status or rights of any employee entitled to relief under this Act, where the employee's status or rights have been otherwise defined or determined by statute, contract or collective bargaining agreement. The rights and remedies provided to employees by the Act and its regulations are in addition to, and not in lieu of, any other contractual or statutory rights and remedies of the employees, and are not intended to alter or affect such rights and remedies, except that the period of notification required by the Act shall run concurrently with any period of notification required by contract or any other statute.

Nothing in this part shall be read to abridge, mitigate, reduce, remove, or otherwise affect an employer's responsibility to comply with the notice requirements set forth in the federal Worker Adjustment and Retraining Notification Act and regulations promulgated thereunder.

Subj:      **Fwd: Carter**
Date:      1/13/2016 12:59:52 P.M. Eastern Standard Time
From:      JOCHETRIT@aol.com
To:        roy@nyhtc.org

We have still not received a response to the email below, please advise.  I want to resolve this.

From: JOCHETRIT@aol.com
To: roy@nyhtc.org
Sent: 12/9/2015 11:51:26 A.M. Eastern Standard Time
Subj: Fwd: Carter

have not received a response to the email below, please advise

From: JOCHETRIT@aol.com
To: roy@nyhtc.org
BCC: lilly@chetritgroup.com
Sent: 11/24/2015 4:03:53 P.M. Eastern Standard Time
Subj: Carter

Peter,

I have received the Voluntary Settlement Agreement (VSA).  My understanding was that the amount in the VSA would cover all outstanding matters and monetary issues between the Carter Hotel and your office.

According to our discussion, the items covered were the following:

     Warn Act and Severance
     RFI for ownership information
     RFI for work to be performed
     Fines for work already performed

Even though we both have our own view on these matters -- that we did not have to pay anything close to this amount -- for the sake of our relationship, we wanted to resolve this issue once and for all; we made a settlement agreement that covers it all.

Joseph